### BITUMINOUS INSURANCE COMPANIES

v.

### PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY.

Civ. A. No. 74–2457.

United States District Court, E. D. Pennsylvania.

Dec. 27, 1976.

---

Roger J. Harrington, Philadelphia, Pa., for plaintiff.

Jan E. DuBois, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Plaintiff, Bituminous Insurance Companies (BIC), insures Leonard Shaffer Associates, Inc. (Shaffer), a general contractor. Defendant, Pennsylvania Manufacturers' Association Insurance Company (PMA), insures Lessner and Co., a subcontractor hired by Shaffer to do the air conditioning, plumbing, heating and ventilating work on a certain building. In the contract between them, Lessner agreed to indemnify Shaffer, and to defend Shaffer against all claims arising out of the execution of the work covered by their contract. Extensive water damage occurred during the construction work, and suits were instituted by the building owner and the tenant against Shaffer and Lessner in the Philadelphia Court of Common Pleas. Thereafter BIC filed this action seeking a declaratory judgment that PMA is obligated to furnish a defense to Shaffer and to pay all judgments against Shaffer arising out of the Common Pleas suits. BIC also seeks reimbursement for expenses incurred in investigating and defending those suits.

This matter was tried before me on March 15, 1976. PMA's Trial Memorandum raised a significant issue which had to be decided before I could reach the merits of the case. PMA contended that Shaffer is an indispensable party to this declaratory judgment suit, and unless it is joined, this court lacks power to hear the case under the Declaratory Judgment Act, 28 U.S.C. § 2201. BIC has made no effort to join Shaffer, apparently because its presence would destroy diversity between the parties,[1] leaving no basis for this court's jurisdiction.[2] I invited the parties to submit supplemental memoranda on the question whether the case could be adjudicated in the absence of Shaffer as a party. Memoranda were submitted and oral argument has been heard. This jurisdictional question will be considered first. I will discuss PMA's contention regarding the need to have Shaffer as a party under the Declaratory Judgment Act, 28 U.S.C. § 2201, and I will also discuss the issue under what I consider its proper analysis under Fed.R. Civ.P. 19.

### *"Indispensability"* of Shaffer as a party.

Rule 19 sets forth the standards by which the court is to determine when a person

---

1. Although the citizenship of Shaffer is nowhere made a part of the record, counsel for BIC and PMA stated during the proceedings before me that Shaffer's joinder would destroy this court's diversity jurisdiction. It is apparently a Pennsylvania corporation.

2. The Declaratory Judgment Act does not provide an independent basis of jurisdiction for this court. The Act permits the court to enter-

tain a certain class of cases which otherwise would not be ripe for decision, but the court may do so only when it has jurisdiction over the suit on some independent grounds, e. g., diversity of citizenship, or federal question. *See Johnson v. County of Chester,* 413 F.Supp. 1299, 1306 (E.D.Pa.1976); 6A Moore's Federal Practice ¶ 57.23.

should be joined as a party to a suit where joinder is possible, and when the suit must be dismissed if joinder is not possible. In the latter situation the person is then "regarded as indispensable." PMA asserts that Shaffer is "indispensable" but not on the basis of Rule 19. PMA contends, instead, that· in the absence of Shaffer, the "actual controversy" which is required by the express language of the declaratory judgment statute, 28 U.S.C. § 2201, is lacking between BIC and PMA.

PMA's position depends on a line of cases holding that in a suit between insurers to determine which is obligated to provide coverage or to defend on behalf of an insured, the insured must be made a party. That rule was applied by the late Judge Goodrich in *Nationwide Mutual Insurance Co. v. Fidelity & Casualty Co.,* 286 F.2d 91 (3d Cir. 1961), wherein he stated:

> "Federal courts are not authorized to give advisory opinions and if we told the insurance companies their respective rights and duties against each other we certainly would be giving an advisory opinion. Each of the insurance companies has issued an insurance policy. It is called upon under the terms of that policy to defend its insured if action is brought against him. Such actions have been brought. It is impossible for us to say in this action *where the insured are not parties* that any company is relieved of its duty to defend."

*Id.* at 92–93 (emphasis added, footnotes omitted).

*Nationwide Mutual* relied on *American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.,* 280 F.2d 453 (5th Cir. 1960). In that case the Court of Appeals for the Fifth Circuit held that the insurer had no right to deny its duty to defend its insured where the claims asserted against the insured were clearly within the coverage of the policy. "That investigation or defense of these suits . . . may fortuitously uncover a potential third party defendant or the existence of some party . . . who has, by some contract to which · they are not a party, undertaken to provide protection to another, does not alter or modify in any way the nature of the claim or the obligation to defend it." *Id.* at 459. *See also Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.,* 416 F.2d 707 (7th Cir. 1969); *Travelers Indemnity Co. v. Standard Accident Insurance Co.,* 329 F.2d 329 (7th Cir. 1964); *Allstate Insurance Co. v. Federated Mutual Implement and Hardware Insurance Co.,* 254 F.Supp. 629 (D.S.C. 1966).

These cases furnished support for PMA's position that Shaffer is an "indispensable" party to this suit between BIC and PMA, but these precedents have been severely undermined by the Supreme Court's decision in *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

*Provident Tradesmens* was a declaratory judgment suit instituted by Provident Tradesmens as administrator of the estate of John R. Lynch, who died in an automobile accident. Lynch was a passenger in a car driven by Donald Cionci, which Cionci had borrowed from one Edward S. Dutcher. The suit [3] was brought against Lumbermens Mutual Casualty Company, Dutcher's insurer, and Cionci's estate, seeking a declaration that the coverage of Dutcher's insurance extended to Cionci. Provident Tradesmens had earlier obtained a default judgment in the amount of $50,000 against Cionci's estate when Lumbermens refused · to defend on the ground that Cionci's use of the automobile exceeded the permission granted by Dutcher, and, therefore, Dutcher's policy did not provide coverage to Cionci. Unable to obtain satisfaction of the judgment from Cionci's estate, Provident Tradesmens sought a declaration that Lumbermens was liable as Dutcher's insurer.

At the close of the trial of the declaratory judgment action, the trial judge directed a verdict in favor of Provident Tradesmens on the ground that Pennsylvania's Dead

---

**3.** John Landis Harris, who was injured in the accident, and the estate of Thomas W. Smith, who was killed in the accident, were also plaintiffs in the declaratory judgment suit.

Man's Act prevented the defendants from offering any evidence to rebut the presumption of permission. The judgment entered in the case declared that "Donald Cionci was driving the motor vehicle owned by Edward S. Dutcher and insured by the Lumbermens Mutual Casualty Company under its policy . . . with the permission of Edward S. Dutcher . . . ." and that Cionci "was an insured as defined in the policy." The Court of Appeals for the Third Circuit, after reargument *en banc,* reversed on two grounds which had not been raised in the trial court. One of the grounds was that "there was a failure to join an indispensable party to this action, Dutcher, the named insured in Lumbermens' policy."[4] *Provident Tradesmens Bank and Trust Co. v. Lumbermens Mutual Casualty Co.,* 365 F.2d 802, 804–05 (3d Cir. 1966), *rev'd sub nom., Provident Tradesmens Bank and Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

The Court of Appeals reasoned that because of the finite limits of Dutcher's policy, he had an interest adverse to the interests of Lynch's estate and Smith's estate, and the determination of the rights of the two estates to coverage would necessarily affect Dutcher's rights in the policy. The Court then stated:

> "It has been settled for more than a century and a half that a party is indispensable when his rights may be affected and that a court 'cannot proceed to a final decision of the cause' until he is made a party.
>
> The indispensable party doctrine is not procedural. It declares *substantive* law and accords a *substantive right* to a per-

son to be joined as a party to an action when his interests or rights may be affected by its outcome. The indispensable party doctrine is beyond the reach of, and not affected by, Rule 19 of the Federal Rules of Civil Procedure, since the Rules, as later developed, cannot 'abridge, enlarge or modify any *substantive right.'* 28 U.S.C.A. § 2072 (emphasis supplied)."
> *Id.* at 805 (citations omitted).

The Supreme Court reversed. It noted that the question of whether Dutcher was an indispensable party was "one to which [the newly amended] Rule 19(b) appears to address itself. . . ."[5] 390 U.S. at 108–09, 88 S.Ct. at 737. Justice Harlan examined the result which would be reached by applying the tests of Rule 19. He concluded that Rule 19 made adequate provision for consideration as to how substantive rights might be affected, and that it was "a valid statement of the criteria for determining whether to proceed or dismiss in the forced absence of an interested person." *Id.* at 125, 88 S.Ct. at 746. In other words, the determination of whether a case could proceed in the absence of a party was to be governed by the tests of Rule 19, even though substantive rights of the absent party would be affected.

■ The effect of *Provident Tradesmens* is to make Rule 19 the test for determining whether a court may proceed with a case in the absence of a person whose interests may be affected by the outcome. *Nationwide Mutual Insurance Co. v. Fidelity & Casualty Co., supra,* and the other cases on which PMA relies are, therefore, no longer viable precedent.[6] Since *Provident Tredes-*

---

4. The second ground was that "the District Court erred in that in the appropriate exercise of its discretion it should have denied relief without consideration of the merits in view of the fact that two pending actions in a state court . . . in which the here absent Dutcher, as well as the Cionci, Lynch and Smith estates, and Harris, were parties, presented the critical mooted question as to the coverage of Lumbermens' policy at issue in the instant declaratory judgment action." 365 F.2d 805.

5. Rule 19 was completely rewritten between the time of the proceedings in the trial court and the appellate stages. The amendment to the Rule was considered insignificant, however: "[t]he majority in the Court of Appeals did not purport to rely on the older version, but on its conclusion that the Rule, in either form, had no application to this case." 390 U.S. at 116 n. 12, 88 S.Ct. at 741 n.12.

6. On at least two occasions the Court of Appeals for the Third Circuit has either distinguished or questioned the decision in *Nationwide Mutual.* In *Globe Indemnity Co. v. St.*

*mens* was itself a declaratory judgment action, there can be no doubt that Rule 19 is also the test for determining the indispensability of parties to a declaratory judgment suit. The lower federal courts have followed the guide of the Supreme Court. *See State Farm Mutual Automobile Insurance Co. v. Mid-Continent Casualty Co.,* 518 F.2d 292, 294 (10th Cir. 1975); *County of Wyoming v. Erie Lackawanna Ry. Co.,* 360 F.Supp. 1212 (W.D.N.Y.1973), *aff'd sub nom., County of New York v. Insurance Company of North America,* 518 F.2d 23 (2d Cir. 1975). *See also* 6A Moore's Federal Practice ¶ 57.25.

The test, therefore, is not whether, as suggested by *Nationwide Mutual,* there is an actual controversy sufficient to satisfy the requirements of the Declaratory Judgment Act in the absence of the insured. Clearly there is a controversy between BIC and PMA as to which insurer is obligated to defend the state court suits. *See Sears, Roebuck & Co. v. Zurich Insurance Co.,* 422 F.2d 587, 589 (7th Cir. 1970). The question is, rather, whether Shaffer's interests are so intertwined in the dispute between the insurers that under the standards of Rule 19 Shaffer is an indispensable party and must be joined. I will now examine Shaffer's interests in the light of Rule 19.

Rule 19 provides, in pertinent part:

*"(a) Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he

claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . . .

*(b) Determination by Court Whenever Joinder not Feasible.* If a person described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include; first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

In *Provident Tradesmens* the Supreme Court saw Rule 19(b) as suggesting four "interests" that were to be examined to make the determination as to whether the court should proceed with a suit in the absence of a party whose joinder was not possible: (1) The plaintiff's interest in having an adequate forum. (2) The defendant's interest in avoiding multiple litigation,

Paul Fire and Marine Insurance Co., 369 F.2d 102 (3d Cir. 1966), the Court of Appeals held that the district court had jurisdiction to declare the respective duties of two insurers to defend in a wrongful death action brought against a party indemnified by one of the insurer's assureds. The Court did not follow its decision in *Nationwide Mutual,* noting that "the issue of the duty to defend may not be put aside because of the absence of any of the insured parties, since here all the insured parties have been named as defendants." 369 F.2d at 104. In *Transport Indemnity Co. v.*

Home Indemnity Co., 535 F.2d 232 (3d Cir. 1976), a Third Circuit Panel questioned the continued validity of *Nationwide Mutual,* but did so on the basis of another Third Circuit decision involving a suit between insurers in which the insured was joined as a party. *See* 535 F.2d at 234 n.2. No mention was made of the Supreme Court's decision in *Provident Tradesmens* or the role of Rule 19. I am convinced, however, that in the light of *Provident Tradesmens* if the Third Circuit were faced with the question, it would no longer adhere to the decision in *Nationwide Mutual.*

inconsistent relief, or sole responsibility for a liability he shares with others. (3) The interest of the outsider who would be joined were it possible. (4) The interest of the court and the public in complete, consistent, and efficient settlement of controversies. In addition to the four interests to be considered, "Rule 19(b) also directs a district court to consider the possibility of shaping relief to accommodate these four interests." 390 U.S. at 109–112, 88 S.Ct. at 739.

■ An examination of the four interests outlined above as they relate to the instant case reveals clearly that Shaffer is not an indispensable party to the present suit. That conclusion is even more apparent when the interests in the present case are compared to those in *Provident Tradesmens* where the Supreme Court held that the non-joined insured was "dispensable."

### (1) *Plaintiff's interest in having an adequate forum.*

■ The interest of BIC in having a forum is obvious; absent a place to bring the declaratory judgment action, BIC would be obligated to defend Shaffer in the Common Pleas actions. In the present suit the question is whether an alternative forum is available to plaintiff. An alternative forum is available to BIC; it could institute suit for a declaratory judgment in state court, and it could join Shaffer as a party there. In *Provident Tradesmens* it was unclear whether plaintiffs could have sought a declaratory judgment in state court. In that case, the declaratory judgment action had already been fully litigated and appealed. "Their interest in preserving a fully litigated judgment should be overborne only by rather greater opposing considerations than would be required at an earlier stage when the plaintiffs' only concern was for a federal rather than a state forum." *Id.* at 112, 88 S.Ct. at 739. In the present suit, then, plaintiff's interests do not support a conclusion that the suit should go forward without Shaffer. BIC's interests may be regarded as a neutral factor in the determination of Shaffer's indispensability, while in *Provident Tradesmens* the plain-

tiffs' interests affirmatively supported the conclusion that the absent party was "dispensable."

### (2) *Defendant's interest in avoiding multiple litigation, etc.*

■ The interest of defendant, PMA, in having Shaffer joined as a party, and thus its interest in having this suit dismissed, seems to me to be more theoretical than real. Regardless of the outcome of the present suit, if Shaffer is not joined as a party, it can bring suit itself and relitigate the question of whether BIC or PMA is obligated to defend it and indemnify it for any liability it may incur. Thus there is the possibility that PMA could be faced with inconsistent verdicts: one finding it obligated to defend and indemnify, and another finding it not obligated to do so. Shaffer, however, has shown no inclination to litigate the question. The fact of the matter is that Shaffer contracted with Lessner to have Lessner's insurer defend and indemnify Shaffer. It appears to be a matter of indifference to Shaffer whether BIC or PMA provides a defense. Since either PMA or BIC is obligated to defend it, Shaffer really has no reason to litigate the question. Thus there is little, if any, likelihood that PMA will be required to litigate twice the question of its duty to defend Shaffer or that it will be faced with inconsistent verdicts.

Similarly in *Provident Tradesmens,* the defendants had "no stake, either asserted or real, in the joinder of . . . [the absent person]." *Id.* at 112, 88 S.Ct. at 739. In that case, as here, the defendant's "only concern with the absence of . . . [a party] was and is to obtain a windfall escape from its defeat at trial." *Id.* The interest of the defendant, PMA, therefore, in having Shaffer present as a party provides no justification for finding Shaffer to be an indispensable party.

### (3) *The interest of the outsider.*

The interest which is the most complex and difficult to evaluate is that of Shaffer, the "outsider," (i. e. the non-party in the

declaratory judgment suit). Although Shaffer will not be legally bound by any judgment in a suit to which it is not a party, as a practical matter the declaratory judgment will determine which insurer is to defend it. *See* 390 U.S. at 110, 88 S.Ct. 733. The question is then whether this court's determination as to which insurer is to defend Shaffer could in any way so prejudice Shaffer's interests that "in equity and good conscience" the action should be dismissed since Shaffer cannot be joined as a party.

█ Shaffer chose BIC as its insurer, and in some instances the fact that it bargained for BIC would entitle it to be defended by BIC. *See Travelers Indemnity Co. v. Standard Accident Insurance Co.,* 329 F.2d 329, 331 (7th Cir. 1964); *American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.,* 280 F.2d 453, 549–60 (5th Cir. 1960). As has been noted previously, however, Shaffer contracted with Lessner to have Lessner's insurer defend Shaffer for claims arising from the construction project. Obviously Shaffer is only concerned that it be defended, and is equally willing to accept either BIC or PMA.

In *Provident Tradesmens* the decision as to whether an insurer was obligated to defend and indemnify could have affected the insurance funds which would have been available to Dutcher, the outsider, were he subsequently also found liable. The Court concluded that the threat that the funds of Dutcher's insurer might be exhausted and not be available to him for his own needs was small and that the lower court should shape the judgment in such a fashion as to avoid the problem altogether. In the instant case, the total recovery sought in the state court suits is less than the limits of coverage in either of the policies. Thus there is no danger that whatever result is reached here could leave Shaffer less than fully protected for any liability it might incur.

█ After much thought, I have been able to imagine only two interests of Shaffer that could conceivably be affected by the judgment in this case, and upon close examination, these interests appear to be fully protected even without the joinder of Shaffer. First, if it be determined that PMA is obligated to defend Shaffer in the Common Pleas actions, PMA will be representing both Shaffer and Lessner, creating a potential conflict of interest. Under the construction contract between them, Lessner is obligated to defend and indemnify Shaffer for all liability of any kind whatsoever growing out of the execution of the work covered by the contract. Since Lessner is not obligated to indemnify Shaffer for Shaffer's independent negligence, (see *infra* at p. 551), the interests of Shaffer and Lessner do not coincide. At trial Lessner's insurer, PMA, would defend, of course, by attempting to show no fault on the part of *either* Lessner or Shaffer. At some point in the trial, however, if it becomes apparent that at least one of them was at fault, PMA might then be motivated to attempt to show that the damage was caused by some independent act of Shaffer, and thereby relieve PMA of the obligation to indemnify. The conflict is obvious. The solution is, however, equally obvious. PMA would simply be required to provide separate counsel for Lessner and Shaffer under this court's power to fashion the remedy to protect the absent party's interest.

Even if PMA did not provide separate counsel for Shaffer and Lessner, the conflict of interest would not really endanger *Shaffer's* interests. Whatever liability Shaffer might incur for which it would not be entitled to be indemnified by Lessner (and therefore, PMA), would be covered by BIC as Shaffer's direct insurer. Thus Shaffer's interest in having counsel provided who will uncompromisingly defend its interests is somewhat illusory; any injury Shaffer might suffer by being represented by biased counsel would in fact be borne by BIC.

Only one other interest of Shaffer could be affected by the decision as to whether BIC or PMA is obligated to defend and indemnify Shaffer. If it be decided that Shaffer's insurer (BIC) has the obligation to defend, then conceivably Shaffer's insur-

ance premiums could be affected as a result. In this aspect, however, Shaffer's interests are not in conflict with BIC's. While Shaffer wishes to avoid an increase in premiums, BIC wants to avoid liability to defend or pay. BIC's presence in the instant declaratory judgment suit, therefore, fully protects Shaffer's interests as well as its own.

In sum, the "outsider," Shaffer, does not have a sufficient interest in being a party to this declaratory judgment suit to warrant dismissal of the suit. Whatever interest it has may be fully protected by the presence of its direct insurer, BIC, and by molding the judgment in this action to provide for the appointment of separate counsel to represent Shaffer and Lessner at the trial of the Common Pleas actions.

### (4) *Interest of the court and public in efficient adjudication.*

The final interest to be considered is that of court and public in the complete and efficient settlement of controversies. Significantly the presence or absence of Shaffer will have no effect on the issues which this court may adjudicate. Because the Common Pleas actions have not been tried, it is impossible to say whether PMA, as Lessner's insurer, or BIC, as Shaffer's insurer, or neither of them, will be obligated to pay for the water damage that occurred on the construction site. That question cannot be decided until it has been determined whether the damage was the result of the work arising out of the construction contract between Shaffer and Lessner, or was the result of the independent negligence of Shaffer, or resulted from the acts of some third party. Shaffer's presence in this suit would not change that.

What can be decided in this suit is whether PMA is obligated to defend Shaffer and to assume Shaffer's liability for Lessner's acts in prosecuting the work. It can also be decided in this suit whether PMA must defend Shaffer against allegations that Shaffer was independently negligent, and whether PMA must indemnify Shaffer for its own independent negligent

acts. Such an adjudication may well speed the final conclusion of this matter in the state courts or enhance the chances for a settlement. In my view, therefore, the interests of justice will be forwarded by deciding this declaratory judgment action even in the absence of Shaffer. Although the instant case has not reached the appellate level as was the case in *Provident Tradesmens,* the trial has taken place. To dismiss the suit at this point would result in a repetition of the trial in another forum, and the judgment in the second trial could only decide the issues which are here ripe for decision.

Applying the tests in *Provident Tradesmens,* therefore, I conclude that Shaffer is not an indispensable party to the present declaratory judgment action and will now proceed to deal with it on the merits and set forth my Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff, Bituminous Insurance Companies, is an Illinois corporation with its principal place of business in Illinois.

2. Defendant, Pennsylvania Manufacturers' Association Insurance Company, is a Pennsylvania corporation with its principal place of business in Pennsylvania.

3. Plaintiff and defendant are licensed in the Commonwealth of Pennsylvania as casualty insurers.

4. On November 18, 1970, Lessner & Co., Inc., as subcontractor, entered into a contract (hereinafter the Contract) with Leonard Shaffer Associates, Inc., as contractor, which provided that Lessner was to "[f]urnish competent labor and materials to fully complete all required Plumbing, Heating, Ventilating and Air Conditioning Work . . . ." on a construction project at 1624 Locust Street, Philadelphia.

5. Paragraph 22 of the Contract provided:

"The Subcontractor shall defend and save the Contractor and Owner harmless from all liability of any kind whatsoever growing out of the execution of the work

covered by this contract, and Subcontractor shall carry public liability insurance, property damage insurance, and workmen's compensation insurance in amounts and in a company or companies satisfactory to Contractor, indemnifying and saving harmless Contractor and Owner against all costs and/or damages, either under any workmen's compensation law or otherwise, which either of them may sustain or be liable for, or by reason of any personal injury or property damage growing out of the execution of the work covered by this contract, or any extra work undertaken as herein provided, and shall at his own expense, defend any suit or action brought against Contractor or Owner founded upon a claim of such injury or damage. Subcontractor shall furnish a Certificate of Insurance showing compliance with this condition prior to starting work, with limits of liability for bodily injury and property damage in form and amount as is satisfactory to Contractor, and shall also furnish a Certificate of Automobile Insurance and/or vehicle insurance coverage in form and amount as is satisfactory to Contractor. This indemnify is in addition to all other obligations assumed by the Subcontractor under this contract."

6. In accord with the obligations under the Contract, Lessner obtained a general liability insurance policy from the defendant, Pennsylvania Manufacturers' Association Insurance Company (PMA). The policy was issued on July 1, 1971, and covered the period July 1, 1971 to July 1, 1972.

7. The Lessner-PMA policy provided in part:

"The company [PMA] will pay on behalf of the insured all sums which the insured, by reason of contractual liability assumed by him under a contract designated in the schedule for this insurance, shall become legally obligated to pay as damages . . . caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages . . . even if

any of the allegations of the suit are groundless, false or fraudulent . .."
"Contractual liability" is thereafter defined as "liability expressly assumed under a written contract or agreement." The schedule provides under "designation of contracts" covered,

"Blanket Contractual
  All Construction Agreements"

8. On July 9, 1971 a plastic pipe installed by Lessner as part of its air conditioning work at the Locust Street project burst, resulting in water damage to building and to the property of the building tenant, Sperry Rand Corporation.

9. On July 13, 1971 Lessner forwarded to Shaffer a Certificate of Insurance issued by PMA on the same date, referring to the 1624 Locust Street construction project.

10. Seeking to recover for the damages occurring on July 9, 1971, the owner of the building, Strouse, Greenberg and Company, and the tenant, Sperry Rand Corporation, brought civil actions Nos. 1096, January Term, 1973, and 3396, August Term, 1973, respectively, in Philadelphia Court of Common Pleas against Lessner.

11. Lessner, under Rule 2252(a) of the Pennsylvania Rules of Civil Procedure, joined additional parties as defendants to the Strouse, Greenberg and Company and Sperry Rand Corporation suits, including a Philip Mastrin, architect on the Locust Street project.

12. After being joined by Lessner, Mastrin moved pursuant to Rule 2252 to join Shaffer as an additional defendant in both suits.

13. The allegations in the Common Pleas actions against Shaffer are identical and state that:

"The damages alleged by plaintiff Strouse, Greenberg, if any, are the result of the breach of contractual obligations and negligence and carelessness of additional defendant, Shaffer, by and through its servants, agents and employees, in that it:

(a) failed to supply skilled workmen and proper materials for the work in con-

nection with the plumbing, heating, ventilating and air conditioning system;

(b) failed to properly direct, administer, superintend, and oversee the servants, agents and employees of its subcontractors in the performance of the work;

(c) caused, allowed, and permitted the inclusion of faulty workmanship and materials into the plumbing, heating, ventilating and air conditioning system;

(d) failed to accomplish its duties with regard to the plumbing, heating, ventilating and air conditioning system in accordance with the plans and specifications which were a part of its contract with Strouse, Greenberg;

(e) failed to use adequate and proper care in the performance of the work with regard to plumbing, hearing, ventilating, and air conditioning system covered by its contract;

(f) acted in a general, negligent and careless manner."

14. During the period of the Locust Street construction project, Shaffer was insured under a policy issued by Bituminous Casualty Corporation.

## DISCUSSION

The issue in this case is whether the indemnity clause in the Shaffer-Lessner contract obligates PMA, as Lessner's insurer, to defend Shaffer in the state court actions and to indemnify Shaffer for any liability it may incur from judgments in those suits.

The parties do not contest the existence of the Contract, nor do they contest the fact that it is an integrated writing. They also agree that Shaffer is an assured of BIC, and that Lessner is an assured of PMA. The validity and terms of the insurance contracts are undisputed. Finally, the parties do not question the potential liability of Shaffer and Lessner in the state court suits arising out of the damage at the construction site where they were contractor and sub-contractor, respectively. The disputed obligations of the parties to this suit turn entirely on the question of the scope of

paragraph 22 of the Contract between Shaffer and Lessner which provides that Lessner "shall defend and save . . . [Shaffer] harmless from all liability of any kind whatsoever growing out of the execution of the work covered by this contract. . . ." PMA has contracted with Lessner, up to certain limits, to pay any amounts Lessner becomes legally obligated to pay as damages for contractually assumed liability. BIC contends that these two contracts create an obligation on PMA's part to defend Shaffer in the Common Pleas suits and to indemnify it from judgments.

PMA admits that it must discharge whatever obligation Lessner may have to defend and indemnify Shaffer, but it denies that it or Lessner is under a duty to defend and indemnify Shaffer in these state court suits in which there are charges of independent acts of negligence against Shaffer. PMA contends, therefore, that the liability does not grow "out of the execution of the work" by Lessner, and therefore is not covered by the policy.

I. Obligation to defend and to indemnify Shaffer for liability growing out of *Lessner's* execution of the work.

The Shaffer-Lessner Contract, at very least, obligates Lessner to defend and indemnify Shaffer for any liability Shaffer might incur as the result of Lessner's acts in executing the work under the Contract. The plain meaning of the language of paragraph 22 dictates that conclusion. Under the insurance contract issued by PMA to Lessner, PMA agreed to pay all sums which Lessner became legally obligated to pay as damages resulting from contractual liability which Lessner assumed. Clearly, therefore, PMA was obligated to pay any sum which Lessner was obligated to pay as the result of its promise to defend and to indemnify Shaffer. PMA's obligation to Shaffer is co-extensive with Lessner's contractually assumed obligation.

The state court suits include six allegations specifically against Shaffer. At

least three of these allegations, and perhaps as many as five of them, charge that Shaffer is derivatively liable for damage resulting from Lessner's execution of the work. As to those charges, there is no doubt whatsoever that Lessner, and therefore PMA, is obligated to defend and to indemnify. The presence of allegations that Shaffer was independently negligent does not diminish PMA's obligation to defend against the charges stemming from Lessner's execution of the work. *Moffat v. Metropolitan Casualty Insurance Co.,* 238 F.Supp. 165, 173–74 (M.D.Pa.1964). PMA cites no authority for the proposition that the mere presence of such allegations eliminates the obligation to defend against allegations of derivative negligence.

II. Obligation to defend and indemnify Shaffer for liability arising from *Shaffer's* negligent acts.

Somewhat more difficult are the questions: (1) What is PMA's obligation to *indemnify* Shaffer for liability arising out of Shaffer's independent negligence? and (2) What is PMA's obligation to *defend* Shaffer against the allegations that Shaffer's independent negligence was the cause of the damages at the Locust Street project?

A. The obligation to *indemnify* for Shaffer's independent negligence.

██ Under the Contract Lessner, and therefore PMA, is to indemnify Shaffer "from all liability of any kind whatsoever growing out of the execution of the work covered by this contract . . . ." Is that language broad enough to include liability resulting from Shaffer's independent negligence? Existing case authority, in my view, indicates that it is not.

In *Brown v. Moore,* 247 F.2d 711 (3d Cir.), *cert. denied,* 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957), plaintiff brought suit for the wrongful death of her husband against the operators of a private sanitarium where he had been a patient. The complaint asserted that the husband's death had been caused by the negligent acts of the defendants and their agents and em-

ployees. The defendants set forth as defenses, *inter alia,* a release executed by the plaintiff and her husband, and an indemnification agreement executed by the plaintiff. The indemnification agreement stated in relevant part that the plaintiff will "indemnify The . . . Sanitarium from any loss resulting from injury to . . . [the deceased] while a patient of . . . the said Sanitarium." 247 F.2d at 720. On appeal from the district court's directed verdict in favor of defendants, the Court of Appeals for the Third Circuit stated:

> "It appears therefore under the law of Pennsylvania that if an indemnitee is to procure protection from loss resulting from his own negligence or from that of his employees or servants, the purpose or intent to effect such indemnification must be expressed in unequivocal terms in the instrument itself. The indemnification agreement in the case at bar in no wise expresses in unequivocal terms an intent or purpose on the part of the plaintiff to indemnify the defendants for loss resulting from the negligence or malpractice of . . . the Sanitarium staff." *Id.* at 723.

The requirement described in *Brown v. Moore, supra,* that an indemnity agreement must unequivocally state the indemnitor's intent to indemnify against the indemnitee's own negligence if the indemnity agreement is to be construed that broadly, has been maintained consistently in later cases. *Gimbel Brothers, Inc. v. William H. Vanderherchen, Inc.,* 468 F.2d 597 (3d Cir. 1972), was a suit by the lessee of several tents against the lessor for damage caused when rain leaked through the tents onto the lessee's property. The District Court granted the lessor's motion for summary judgment based upon the following provision of the lease:

> "3. Lessee hereby indemnifies and agrees to save and keep Lessor harmless of and from any loss, damage, liability, costs, claims or charges whatsoever arising as a result of any claim for damage to property, or injury to person, from, during or because of the use of the leased

property by Lessee, or the erection or taking down thereof, or storing thereof upon the premises, or otherwise, while the same are in the custody or possession of Lessee, except injuries to any employees of Lessor not caused through Lessee's negligence. Without limiting the generality thereof, it is agreed that Lessor shall not be liable for and is hereby indemnified against any damage to property or injury to person suffered by anyone whatsoever through or because of the said leased property while the same is in Lessee's possession or custody due to any fire, no matter how arising in the said leased property or any breakage defect or failing thereof or to any strikes, picketing, labor disturbance or acts of anyone arising from any labor controversy whether the persons committing the same be at the time employees of Lessor or not."

*Id.* at 598.

The Court of Appeals vacated the District Court's judgment, holding that the clause was not an effective defense to the allegations of the complaint that the damage was due to lessor's (the indemnitee's) negligence. The Court of Appeals repeated that "to relieve a party of his own negligence, language must be clear and unequivocal . . . ." *Id.* at 599. The Court went on to note that the cases have distinguished between indemnity clauses explicitly referring to liability for a party's own negligence and those in which there was " 'an obligation to indemnify for "all liability" or "all loss." ' " *Id.*

Both *Brown* and *Gimbel Brothers, Inc.* are based on Pennsylvania state court decisions. *Brown* relies on Pennsylvania cases going back as far as 1890. Typical of state court cases holding that an indemnity clause did not indemnify against the indemnitee's negligence is *Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc.,* 404 Pa. 53, 171 A.2d 185 (1961), in which the agreement provided:

"Contractor will indemnify, save harmless and defend buyer from all liability for loss, damage or injury to person or property in any manner arising out of or incident to performance of this order and will furnish buyer with proper evidence that contractor is insured against such liability.

Contractor will indemnify, save harmless and defend buyer from any and all claims, demands or suits made or brought against buyer on account of any of the terms or provisions of any applicable Workmen's Compensation law and will furnish buyer with the proper evidence that contractor is insured against all liability made under such law."

*Id.* at 55, 171 A.2d at 186.

Continuing the line of earlier cases, the Pennsylvania Supreme Court stated that, while contracts indemnifying a party against his own negligence are valid, the intention to indemnify for loss due to the indemnitee's own negligence "must be expressed in clear and unequivocal language." *Id.* at 57, 171 A.2d at 187. *See also Dilks v. Flohr Chevrolet, Inc.,* 411 Pa. 425, 192 A.2d 682 (1963); *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907).

The only instances in which the Pennsylvania courts or federal courts sitting in Pennsylvania have found the negligence of the indemnitee to be within the scope of the indemnity agreement are those in which the language has been explicit. One such case is *Jamison v. Ellwood Consolidated Water Co.,* 420 F.2d 787 (3d Cir. 1970). In that case an employee of a painting contractor died from a fall while painting a tower for a water company. The jury, in answer to special interrogatories, found that the accident resulted from the water company's negligence. In a third party complaint the water company sought indemnity from the contractor based on the following clause:

"CONTRACTOR shall indemnify WATER COMPANY and carry insurance in accordance with the following provisions:

\* \* \* \* \* \*

CONTRACTOR agrees to indemnify, hold harmless and defend the WATER COMPANY from and against any and all liability for loss, damage or expense which

WATER COMPANY may suffer or for which the WATER COMPANY may be held liable by reason of injury (including death) to any person or damage to any property arising out of or in any manner connected with the operations to be performed under this contract *whether or not due in whole or in part to any act, omission, or negligence of the WATER COMPANY or any of its representatives or employees.*"

*Id.* at 788 (emphasis added).

The Court of Appeals for the Third Circuit held that the indemnity clause was valid, that it was not contrary to public policy, and that it clearly expressed the intent of the parties that the contractor was to indemnify for liability for the accident, even though the accident resulted from the water company's post negligent acts.

*Jamison* relies heavily on the Pennsylvania case of *Westinghouse Electric Co. v. Murphy, Inc.*, 425 Pa. 166, 228 A.2d 656 (1967). The relevant facts of the two cases are similar. In *Westinghouse* the indemnity agreement provided:

" '(b) Seller shall . . . indemnify and save harmless the Buyer against and from any and all claims, demands, actions, courses of action, suits and all other liabilities whatsoever on account of, or by reason of, or growing out of personal injuries or death to seller or its employees, or property damage suffered by Seller and its employees, *whether the same results from negligence of Buyer or Buyer's employees or otherwise,* it being the intent of this provision to absolve and protect Buyer from any and all loss by reason of the premises. (c) Buyer, at its option, may require Seller to supply evidence of insurance satisfactory to Buyer covering the liabilities and indemnification included in paragraphs (a) and (b) above.' "

*Id.* at 168–69, 228 A.2d at 658. (emphasis added).

The Pennsylvania Supreme Court held that the contractual language was sufficiently explicit to put the parties on notice that the indemnitor was to be liable even for loss arising solely from the negligence of the indemnitee. The Pennsylvania courts have continued to follow the guide of *Westinghouse.* The only instances in which indemnity clauses have been held to provide indemnity for the indemnitee's own negligence are those in which the clauses explicitly state that the indemnitor shall indemnify for the indemnitee's "negligence." *See Phillippe v. Rhoads,* 233 Pa.Super. 503, 336 A.2d 374 (1975).

In the instant case, the clause does not provide for indemnity against Shaffer's "negligence;" the word negligence is never used. Absent explicit language that the indemnitor, Lessner, was to be liable for the indemnitee's negligence, the clause cannot, in my view, be construed so broadly as to relieve Shaffer from liability arising from its own independent acts of negligence. PMA, as Lessner's insurer, is not obligated, therefore, to indemnify Shaffer against any liability it may incur in the state court suits if the liability is based on Shaffer's independent negligence.

BIC argues that *Seaboldt v. Pennsylvania Railroad Co.,* 290 F.2d 296 (3d Cir. 1961), and *Shafer v. Reo Motors, Inc.,* 205 F.2d 685 (3d Cir. 1953), are inconsistent with this conclusion. *Shafer* involved a warranty clause in which the manufacturer disclaimed "any liability in connection with the sale of our vehicles," except for the replacement of defective parts. The Court of Appeals held that the disclaimer was effective against liability for damage to the vehicle resulting from negligent design of the product. Whether or not that case is still an accurate statement of warranty law, it is distinguishable from the present case in that it deals with a warranty clause, not an indemnity clause. A warranty disclaimer seeks to relieve from liability; it does not seek to transfer responsibility for liability, as does an indemnity clause. *Shafer v. Reo Motors* has no precedential value for the instant case in the face of the other cases which deal explicitly with the scope of indemnity clauses.

*Seaboldt v. Pennsylvania Railroad, supra,* can also be distinguished from the present

case, although less readily so. There a railroad employee was injured attempting to open a gate through which railroad tracks led onto shipper's siding on shipper's property. The employee brought suit against the railroad, and the railroad sought indemnity from the shipper based on a contract in which the shipper agreed "to indemnify and hold harmless the Railroad company for loss, damage or injury from any act or omission of the [shipper] . . . ." The railroad also relied on a provision in the contract wherein the shipper promised to maintain the sidetrack and all appurtenances. *Id.* at 297. The jury's verdict imposed liability on the railroad and absolved the shipper of liability for indemnity. On appeal, the Court of Appeals for the Third Circuit held that "the contract is broad enough to make [the shipper] . . . liable for the consequences of this accident if the jury [on retrial] should find the Railroad liable." *Id.* at 298.

What distinguishes *Seaboldt* from the present case is the reliance of the Court of Appeals on the shipper's promise to maintain the gate, and the shipper's agreement to assume whatever duty of care regarding the gate the railroad owed to the employee:

"We rely upon the language which [the shipper] agreed to in entering into this contract. It promised to maintain the siding. It also promised to hold the Railroad harmless for damage from any act or omission. If this gate was in a state of disrepair, that disrepair is certainly due to an omission on [the shipper's] part to 'maintain' all the appurtenances."

*Id.*

In the instant case Lessner did not agree to assume any of Shaffer's duties as the contractor. That is, if Shaffer is to be found independently negligent, it would likely be for Shaffer's failure "to properly direct, administer, superintend, and oversee the servants, agents and employees of its sub-contractors in the performance of the work." The duty to supervise and coordinate the work of all sub-contractors, including sub-contractors other than Lessner, was Shaffer's obligation, and Lessner did not

contract to assume that duty. In *Seaboldt* the Court of Appeals found that the indemnitor was obligated to indemnify for the indemnitee's negligence because the indemnitor had specifically agreed, by contract, to perform the duty which formed the basis for the charge that indemnitee was negligent. Lessner assumed no such duty of Shaffer's.

I conclude, therefore, that PMA must indemnify Shaffer for such liability as Shaffer may incur from the judgments in the Common Pleas suits, but only to the extent that the liability derives from Lessner's execution of the work under the Contract. To the extent that Shaffer may be liable for its own independent negligent conduct, PMA is not under a duty to indemnify Shaffer. This cannot be resolved until after the trial of the Common Pleas actions determines whether the damage to the Locust Street Project arose from Lessner's execution of the work covered by the Contract, or from Shaffer's independent negligent acts, or from the actions of a third party.

B. The obligation to *defend* Shaffer against allegations that Shaffer was independently negligent.

The extent of Lessner's, and therefore PMA's, obligation to defend Shaffer is also dependent on the language of Paragraph 22 of the Lessner-Shaffer Contract, which provides in part:

"[Lessner] shall defend and save . . [Shaffer] . . . harmless from all liability of any kind whatsoever growing out of the execution of the work covered by this contract . . . and [Lessner] shall at his own expense, defend any suit or action brought against [Shaffer] . . . founded upon a claim of such injury or damage [growing out of the execution of the work covered by this contract]."

This is no different than the language applicable to Lessner's duty to indemnify, and logically it would seem to require the conclusion that PMA is under no duty to defend Shaffer against charges that Shaffer was independently at fault. That is not the case, however.

I have earlier noted that several allegations of the Common Pleas complaints assert that Shaffer is liable for damage caused by Lessner's execution of the work and that PMA is obligated to defend Shaffer against such allegations. The Pennsylvania Supreme Court (as have courts of other jurisdictions) has held that where the insurance contract obligates the insurer to defend the insured against some of the claims in the complaint, the insurer must also defend against the claims which are not within the coverage of the policy until the insurer can confine the possibility of recovery to claims outside the coverage of the policy. *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 588–591, 152 A.2d 484 (1959). *See also Carboline Co. v. Home Indemnity Co.*, 522 F.2d 363, 366–67 (7th Cir. 1975); *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 537 (8th Cir. 1970); *Moffat v. Metropolitan Casualty Insurance Co.*, 238 F.Supp. 165, 174 (M.D.Pa. 1964); *Gedeon v. State Farm Mutual Automobile Insurance Co.*, 410 Pa. 55, 58, 188 A.2d 320 (1963); Note, *The Insurer's Duty to Defend Under a Liability Insurance Policy*, 114 Pa.L.Rev. 734, 735–36 (1966); Annot., 50 A.L.R.2d 458, 506–511 (1956). I conclude, therefore, that PMA is obligated to defend Shaffer against all of the allegations in the Common Pleas complaints.

The breadth of PMA's obligation to defend Shaffer as well as Lessner creates a potential conflict of interest for counsel defending the Common Pleas suits. Assuming that he is engaged by PMA, there is a possibility that counsel might attempt to establish that the damage at the construction site was caused solely by Shaffer's independent acts of negligence, thereby relieving Lessner (PMA) of the obligation to indemnify. Shaffer's interests, on the other hand, require that the cases be defended to establish, first, that neither Lessner nor Shaffer was at fault for the damage, but second, if it should be determined that at least one was at fault, to attempt to lay the blame on Lessner in order to preserve Shaffer's right of indemnity. Clearly the interests of Shaffer and Lessner do not coincide, and they must be represented by separate counsel which Lessner (PMA) must provide under its duty to defend.

### III. Reimbursement for Legal Fees to Date.

As a final prayer for relief, BIC seeks a declaration from this court that it is PMA's "obligation to reimburse plaintiff for any costs and expenses and attorney's fees incurred by them in the investigation and defense of said civil actions in the Court of Common Pleas of Philadelphia. . . ."

PMA has argued that, assuming BIC is entitled to be reimbursed, BIC failed to present any evidence as to the amount of its legal fees and expenses and therefore cannot recover same. BIC's attorney has responded, by a letter dated September 22, 1976, addressed to the court that:

"If the Court does enter . . . a declaration as to past legal fees and costs, then it is the plaintiff's burden to submit a bill to the defendant for same, and the defendant's burden to pay those that are reasonable. This is no different from an appellate court, a court in Equity or a court in a Class Action ordering the losing party to pay the winning party's counsel fees."

Although the present situation is different from those referred to by plaintiff's attorney, it is true that all that plaintiff has sought in this action is a judgment declaring defendant's duties to defend, to indemnify, and to reimburse for fees and expenses incident to the Common Pleas suits. Presumably the amount for which plaintiff will be entitled to be reimbursed will not be capable of determination until such time as defendant will have actually taken over the defense of those suits. So far as I am aware, that has not yet happened although a substantial period of time has passed since this matter was tried. Under the circumstances it is sufficient to decide only *whether* plaintiff is entitled to reimbursement, leaving to later proceedings determination as to amount.

Since I have concluded that PMA was and is under a duty to defend Shaffer in the state court actions, even against alle-

gations of Shaffer's own negligence, BIC, which has furnished that defense, is entitled to a declaration that it is to be reimbursed by PMA for its expenses in defending Shaffer to date, and until such time as PMA provides a defense to Shaffer.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and subject matter of this suit under 28 U.S.C. §§ 1332 and 2201, providing for diversity jurisdiction and declaratory judgments, respectively, in that the parties are citizens of different states and the amount in controversy is in excess of $10,-000.

2. There is an actual controversy between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., notwithstanding the absence of Leonard Shaffer Associates, Inc. as a party.

3. In equity and good conscience this matter may proceed without Leonard Shaffer Associates, Inc. as a party within the meaning of Rule 19(b), Federal Rules of Civil Procedure.

4. Plaintiff, Bituminous Insurance Companies, is entitled to entry of a judgment declaring that:

(a) Pennsylvania Manufacturers' Association Insurance Company, under its contract of insurance with Lessner & Company, Inc., agreed to discharge contractually assumed liability of Lessner, up to the policy limits, under Lessner & Company, Inc. construction contracts.

(b) In the construction Contract Agreement between Lessner & Company, Inc. and Leonard Shaffer Associates, Inc., Lessner & Company, Inc. agreed to defend and indemnify Leonard Shaffer Associates, Inc. from all liability of any kind whatsoever growing out of the execution of the work covered·by the Contract Agreement.

(c) Under its contract of insurance with Lessner & Company, Inc., Pennsylvania Manufacturers' Association Insurance Company is under a duty to defend Leonard Shaffer Associates, Inc. against all allega-tions in the suits instituted by Strouse, Greenberg and Co., owner, and Sperry Rand Corporation, tenant, (Court of Common Pleas, Philadelphia, civil action numbers 1096, January Term, 1973, and 3396, August Term, 1973, respectively) for damages growing out of the execution of the work done at 1624 Locust Street.

(d) Under its contract of insurance with Lessner & Company, Inc., Pennsylvania Manufacturers' Association Insurance Company is under a duty to defend Leonard Shaffer Associates, Inc. against all allegations, including allegations charging Leonard Shaffer Associates with independent acts of negligence.

(e) Pennsylvania Manufacturers' Association Insurance Company is under a duty to indemnify Leonard Shaffer Associates, Inc. against all liability for damages growing out of Lessner & Company, Inc.'s execution of the work.

(f) Pennsylvania Manufacturers' Association Insurance Company is under a duty to furnish separate counsel to Leonard Shaffer Associates, Inc. and to Lessner & Company, Inc. in the above noted Common Pleas suits if, and to the extent, separate counsel will be required to avoid a conflict of interest.

(g) Pennsylvania Manufacturers' Association Insurance Company must reimburse Bituminous Insurance Companies for all reasonable fees and expenses incurred by it to date in the defense of the above noted Common Pleas suits, and for such further fees and expenses to be incurred until Pennsylvania Manufacturers' Association Insurance Company shall have actually taken over and provided such defense.

5. Pennsylvania Manufacturers' Association Insurance Company is not obligated to indemnify Leonard Shaffer Associates, Inc. for liability for damages at the 1624 Locust Street Project if such damages were caused by Shaffer's independent acts of negligence.