CITY AND BOROUGH OF
JUNEAU, Appellant,

v.

ALASKA ELECTRIC LIGHT & POWER
COMPANY, Appellee.

No. 4795.

Supreme Court of Alaska.

Jan. 16, 1981.

W. G. Ruddy and M. T. Thomas, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellant.

Gordon E. Evans, Ely, Guess & Rudd, Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE, and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

CONNOR, Justice.

This case concerns the effectiveness and scope of an express "hold harmless" clause

in a franchise agreement between the City and Borough of Juneau and the Alaska Electric Light and Power Company.

During the early morning hours of April 19, 1977, Aage Egsgaard fell when attempting to descend Carroll Way, a stairway running from Gastineau Avenue down to South Franklin Street in Juneau. The stairway is owned and maintained by the City and Borough of Juneau (hereafter City). Unknown to Egsgaard, the City had removed the first several steps of the staircase the previous day and had not yet replaced them. Above the stairway is a landing, which is normally illuminated by a street light located overhead. On the morning in question, however, the street light was out. Although originally barricaded, at the time of the accident the end of the landing was not barricaded, thus, as Egsgaard stepped forward in the darkness, he stepped into space, fell, and injured his back.

Egsgaard sued the City for failing to barricade the landing and for failing to provide proper lighting. The City in turn brought a third-party complaint against appellee Alaska Electric Light and Power Company (hereafter AEL&P) which owns and operates the street light located on the Carroll Way platform next to Egsgaard's home.

The jury subsequently found that the City was 60% negligent, AEL&P 20% negligent, and Egsgaard 20% negligent. Damages amounted to $82,057.50 and were allocated according to fault.[1] Thus Egsgaard's recover was reduced to $65,646.00, plus prejudgment interest, costs and attorney's fees for a total judgment of $88,413.57. The trial court ordered the City to pay the full judgment and further provided that the City recover $23,130.10 from AEL&P, this figure reflecting AEL&P's 20% negligence in the injury, plus its share of interest, cost, and attorney's fees. On July 19, 1979, AEL&P paid its share of the judgment to the City; the City satisfied the plaintiff's judgment on July 26, 1979.

On appeal the city argues that the superior court erred in not shifting the entire judgment onto AEL&P, or, at a minimum, in not requiring AEL&P to pay a pro rata share of the judgment pursuant to AS 09.16.010. The City relies on a hold harmless provision in the 1961 franchise agreement entered into by the City and AEL&P.[2] That provision states:

> "Company Liability—Indemnification. The Company [AEL&P] shall save the City harmless from all loss sustained by the City on account of any suit, judgment, execution, claim, or demand whatsoever, *resulting from negligence on the part of the company, its officers, agents, servants and employees,* in the construction, operation or maintenance of its electrical system in the City, and operations appurtenant thereto." (emphasis added).

The City contends that this provision requires AEL&P to indemnify the City for *all* loss stemming from the sole *or* concurrent negligence of AEL&P. Thus on the facts of this case, the City argues that AEL&P should indemnify the City not only for the 20% negligence attributed to AEL&P, but also for the 60% negligence attributed to the City. The threshold issue is, therefore, whether the above provision was intended to require the indemnitor to indemnify the indemnitee for the latter's own negligence

1. *See Kaatz v. State*, 540 P.2d 1037, 1049 (Alaska 1975).

2. The franchise agreement was in the form of Ordinance No. 460, enacted on October 17, 1961, by the City of Juneau (predecessor to appellant City and Borough of Juneau) and subsequently ratified by the electorate on November 7, 1961. Section 3 of the ordinance granted to AEL&P an exclusive franchise

> "to construct, acquire, own, operate, and maintain a system for the distribution and sale of electric energy for any lawful purpose, and for these purposes grantee shall have the right, privilege, and franchise to erect, maintain, operate, use and replace a distribution system of poles, steel lattice towers, underground conduits, wires and necessary appurtenances for the transmission and distribution of electric current under and upon the streets of the City."

Once granted, a franchise becomes a contract binding upon both parties. *B–C Cable Co. v. City & Borough of Juneau*, 613 P.2d 616, 619 (Alaska 1980).

where the parties were concurrently negligent.[3] *See Manson-Osberg Co. v. State*, 552 P.2d 654, 659 (Alaska 1976). Because we conclude that the unambiguous language of the above clause, as "reasonably construed," limits AEL&P's liability to solely that negligence attributable to it, it is unnecessary to reach AEL&P's arguments that the public duty exception of *Manson-Osberg* applies or that AS 09.16.010 denies it due process and equal protection under the law.

## I.

In *Manson-Osberg*, we held that "the unambiguous language of an indemnity clause as 'reasonably construed' should be given effect, *even if it does not contain words specifying indemnity for the indemnitee's own negligence*." 552 P.2d at 659 (emphasis added). Thus, in construing the indemnity clause in that case we required the contractor to indemnify the state for the state's own negligence in not discovering the contractor's failure to safeguard the work. Our decision in *Manson-Osberg* was based on the rationale that "[i]n modern commerce, indemnity clauses are no longer so unusual as to require such specific mention of the indemnitee's conduct as being within the scope of the indemnifying obligation." 552 P.2d at 659. Thus the City urges that a result similar to that in *Manson-Osberg* should obtain here.

The indemnity clause in the instant case, however, is distinguishable from that in *Manson-Osberg*. There the clause provided:

"The contractor shall save harmless the government and all of its representatives from *all* suits, actions, or claims of any character brought on account of any inju-

ries or damages sustained by any person or property in consequence of *any neglect* in safeguarding the work, *or* through the use of unacceptable materials in the construction of the improvement, *or* on account of any act or omission by the said contractor or his employees, *or* from any claims or amounts arising or recovered under the workmen's compensation laws or any other law, bylaw, ordinance, regulation, order, or decree." (emphasis added).

*Id.* at 657. We found this language to be sufficiently broad,[4] given the foregoing rationale, to conclude that the parties intended the contractor to be responsible for *any* damages resulting from *any* negligence in safeguarding the work. Here, however, the scope of the indemnity requirement is modified by the phrase "*resulting* from negligence on the part of the company...." This evidences a clear intent to restrict AEL&P's liability to only that liability directly attributable to it. This point also distinguishes this agreement from the indemnity agreement involved in *Burgess Construction Company v. State*, 614 P.2d 1380 (Alaska 1980), where the contractor was required to indemnify the state from all claims "on account of the operations of the said contractor." We held in *Burgess* that the clause there involved was effective to shift responsibility for an accident to the contractor, even though the contractor was not negligent but the state, the indemnitee, was. *Id.* at 1382–83.

The phrase in this case cannot reasonably be construed as intending that AEL&P indemnify the City for the City's own negligence.[5] Thus we conclude that the superior

---

3. We reiterate our holding in *Arctic Structures, Inc. v. Wedmore*, 605 P.2d 426 (Alaska 1979), that as to the plaintiff each defendant remains jointly and severally liable for the entire judgment.

4. In *Manson-Osberg*, we concluded that under a fair reading of the contract, "neglect" was not modified by the phrase "by the said contractor," 552 P.2d at 659 n.7, but rather that the contract contained four independent clauses.

5. This result is in line with the oft-stated principle that "provisions exempting a party from liability for the party's own negligence must be clearly set forth." *Dresser Industries v. Foss Launch & Tug Co.*, 560 P.2d 393, 395 (Alaska 1977). *See Howey v. United States*, 481 F.2d 1187, 1192 (9th Cir. 1973) (agreement to indemnify for all claims arising "as a result of" the indemnitor's performance held not to express a "clear intent" that indemnity was intended for the indemnitee's own negligence); *Unitec Corp. v. Beatty Safway Scaffold Co.*, 358 F.2d 470, 479 (9th Cir. 1966) (holding indemnitor liable

court properly required AEL&P to indemnify the City for only that portion of the liability "resulting from" AEL&P's negligence, i. e., for 20% of the judgment.

The United States Supreme Court reached a similar conclusion in *United States v. Seckinger*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). There the court interpreted an indemnity clause remarkably similar to the one involved here. The provision, contained in construction contracts awarded by the federal government, provided that each contractor

> "shall be responsible for all damages to persons or property that occur *as a result of his fault or negligence* in connection with the prosecution of the work." (emphasis added).

397 U.S. at 208 n.9, 90 S.Ct. at 883 n.9, 25 L.Ed.2d at 231 n.9. The Court concluded that the clause required the contractor to indemnify the government when (1) the contractor was solely negligent, or (2) the contractor and the government were concurrently negligent, but only to the extent of the contractor's share of such joint negligence. 397 U.S. at 212–16, 90 S.Ct. at 885–887, 25 L.Ed.2d at 233–35. Thus the clause required the joint defendants to apportion the liability on a comparative fault basis. 397 U.S. at 215, 90 S.Ct. at 887, 25 L.Ed.2d at 235. The Court stated that the clause was insufficiently broad to hold the contractor liable for the government's own negligence, even though the contractor was partially negligent as well. 397 U.S. at 212 n.17, 90 S.Ct. at 885 n.17, 25 L.Ed.2d 234 n.17.

The City argues that such a result is inappropriate here for two reasons. First, it contends that since the agreement was drafted in 1961, before the advent of comparative negligence in Alaska,[6] the parties could not have intended to create a contract right limited to contribution based on comparative fault. Second, the City argues that, at a minimum, the liability involved here should be divided pro rata, pursuant to AS 09.16.010 *et seq.*, Alaska's Uniform Contribution Among Tortfeasors Act. These arguments are dealt with below.

## II.

### A. The Indemnity Agreement In Light of the Law at the Time of Drafting.

The City argues that because comparative negligence did not exist in Alaska when the franchise agreement was entered into, the parties could not have thought in such terms, and, accordingly, must have intended to create a right of full indemnity. To construe the clause any other way, it asserts, would render it superfluous in that it would not give the City any rights it did not already have at common law.

Three broad possible fact patterns can arise in the indemnity setting: (1) the indemnitee is sued vicariously for the negligence of the indemnitor, (2) the indemnitee and indemnitor are concurrently negligent but, because there exists a joint and several liability, only one party is sued, or (3) the indemnitee is *solely* negligent and the indemnitor is, by agreement, liable. Neither party contends that this indemnity provision was intended to encompass the last of these situations.

As to the first situation, it appears that the City would have had, at common law, a right of action over and against AEL&P.[7] However, even assuming that the law in Alaska was clear on this point at that time, we cannot accept the City's argument that providing for such liability by contract grants them nothing more than

---

for indemnitee's negligence on grounds that intent of the parties for such a result was clear, although language did not expressly so provide). For an example of a clearly written clause held to expressly provide for indemnity for the indemnitee's own negligence, see *Gibbs v. United States*, 599 F.2d 36, 40 (2d Cir. 1979).

**6.** *See Kaatz v. State*, 540 P.2d 1037, 1039 (Alaska 1975).

**7.** At that time, Restatement of Restitution § 96 (1937) provided:

> "A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other. . . ."

they had at common law. There are any number of ways in which granting a right by contract may facilitate recovery when compared to the burdens in basing recovery on equitable or common law principles.[8]

But the import of the indemnity clause becomes even clearer when applied to a setting where the parties are concurrently negligent. Prior to 1970, it was at least doubtful whether concurrent tortfeasors had a right of contribution amongst themselves. *Arctic Structures, Inc. v. Wedmore*, 605 P.2d 426, 430 (Alaska 1979).[9] Thus, what this indemnity provision did at the time was to grant the City a contractual right to seek contribution from AEL&P for any liability attributable to AEL&P's conduct. A contractual right of indemnity is commonplace, and one for contribution is different only in degree.[10]

Contrary to the City's assertion, it is not determinative that Alaska had not yet adopted comparative negligence.[11] Apportionment of damages according to fault is hardly a new concept, and courts and juries normally have been able to determine percentages of liability.[12]

Interestingly, in 1953 the Arkansas Supreme Court resolved the issue presented here in the same manner that we have done, though at the time Arkansas had not yet adopted comparative negligence.[13] In *C&L Rural Electric Cooperative Corp. v. Kincaid*, 256 S.W.2d 337 (Ark.1953), after remand, 299 S.W.2d 67 (Ark.1957), an indemnity action by an electrical power company and its insurer against a construction contractor, the court was confronted with determining the meaning of the following contract indemnity clause:

> "The Contractor shall hold the Owner harmless from any and all claims for injuries to persons or for damage to property happening *by reason of any negligence on*

---

**8.** Common law rules of indemnity are abrogated or superceded in an action based on an indemnity contract. *Southern Pacific Co. v. Morrison-Knudsen Co.*, 216 Or. 398, 338 P.2d 665, 670 (1958).

**9.** This court had not ruled on the point. The majority of American jurisdictions had held that there was no right to contribution, though a minority of approximately seven had reached the opposite result by the time this franchise agreement was drafted. *See* Prosser, Torts, § 50 at 306–07 (4th ed. 1971). There was only one reported Alaska case concerning contribution when this franchise agreement was drafted in 1961. *See Spaeth v. Journal Printing Co.*, 139 F.Supp. 188, 191 (D.Alaska 1956). In that case the court, in dictum, acknowledged the general rule that concurrent tortfeasors had no right of contribution against each other.

The City erroneously relies on § 95 of the Restatement, *supra* note 7, to argue that it had available, at common law, a right of contribution. As the Reporter's Notes to § 95 indicate, restitution was *denied* to concurrent tortfeasors. Notes on the Restatement of Restitution 152, 156, 160 (1937). The applicable provision is § 102, which provided:

> "Where two persons acting independently or jointly, have negligently injured a third person or his property for which injury both became liable in tort to the third person, one of them who has made expenditures in the discharge of their liability is *not* entitled to contribution from the other." (emphasis added.)

Restatement, *supra* note 7, at § 102.

**10.** "[I]ndemnity is only an extreme form of contribution." *Slattery v. Marra Bros.*, 186 F.2d 134, 138 (2d Cir. 1951) (L. Hand, J.).

**11.** This court adopted the rule of comparative negligence in *Kaatz v. State*, 540 P.2d 1037, 1049 (Alaska 1975).

**12.** For example, a form of comparative negligence has existed in admiralty since the 1700's. V. Schwartz, Comparative Negligence § 1.3 (1974). In addition, apportionment of damages according to fault has been applied under certain federal statutes since 1908. *See, e. g.*, Federal Employers' Liability Act, 45 U.S.C.A. § 53 (enacted 1908), incorporated by reference into the Jones Act and Merchant Marine Act, 46 U.S.C.A. § 688 (enacted in 1915 and 1920), and the Death on the High Seas Act, 46 U.S. C.A. § 766 (enacted in 1920). The provisions were repeated in a series of state "employers' liability acts." *See* Prosser, Comparative Negligence, 51 Mich.L.Rev. 465, 478–88 (1953).

**13.** Arkansas adopted "pure" comparative negligence in 1955. Legislative Note, 9 Ark.L.Rev. 357 (1955). Subsequently, the legislature amended the statute to provide for a "modified" form of comparative negligence where recovery is denied if the plaintiff's negligence exceeds that of the defendant. *See* Rosenberg, Comparative Negligence in Arkansas: A "Before and After" Survey, 13 Ark.L.Rev. 89, 93 (1959).

*the part of the Contractor or any of Contractor's agents or employees....* " 256 S.W.2d at 338. The court construed the phrase as giving C&L a contract right of indemnity, *separate from* the right of contribution provided for under Arkansas's Uniform [Contribution Among] Tortfeasor's Act, and that the scope of the contractor's liability was to be measured by its "degree of negligence" in contributing to the original plaintiff's injury. 256 S.W.2d at 340, 341. The court subsequently affirmed the jury's finding on remand that the contractor was 60% negligent. *Kincaid v. C&L Rural Electric Cooperative Corp.,* 299 S.W.2d 67, 69, 73 (Ark.1957).

## B. Impact of Alaska's Uniform Contribution Among Tortfeasors Act

The City next contends that AS 09.16.-010 [14]–.060 supercedes the contract indemnity provision and therefore AEL&P is liable for a pro rata (i. e., 50%) share of liability rather than the 20% share measured by its degree of negligence. We find this argument unpersuasive.

Alaska enacted the Uniform Contribution Among Tortfeasors Act in 1970. AS 09.16.010–.060. The act was remedial in nature, designed to provide a remedy where none existed before.[15] The act is intended to apply where two or more parties inadvertently become joint tortfeasors. Nothing in it evidences an intent to preclude parties from contracting, in good faith, as to contribution or indemnification liability.[16] These parties, apparently at arm's length, agreed on a standard for measuring liability. The agreement was incorporated into the franchise. The provision is hardly unconscionable. On the facts of this case, AEL&P's liability, standing at 20%, is less than that which would have been imposed if there were no contract and AS 09.16.010 were applied. However, on different facts, where its negligence exceeds 50%, AEL&P's liability will exceed the mere pro rata contribution provided for in the statute. Thus each party obtains the benefit of its bargain. The agreement is not at odds with the remedial purposes of the statute,[17] and

**14.** AS 09.16.010 provides, in relevant part:

"(a) Except as otherwise provided in this chapter, where two or more persons become jointly or severally liable in tort for the same injury to person or property ... there is a right of contribution among them even though judgment has not been recovered against all or any of them.

(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is compelled to make contribution beyond his pro rata share of the entire liability.

.  .  .  .  .

(f) This chapter does not impair any right or [sic] indemnity under existing law. If one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution ... from the obligee for any portion of his indemnity obligation."

AS 09.16.020 provides:

"In determining the pro rata shares of tortfeasors in the entire liability

(1) their relative degrees of fault shall not be considered;

(2) if equity requires, the collective liability of some as a group constitutes a single share; and

(3) principles of equity applicable to contribution generally shall apply."

**15.** The House Judiciary Committee Report on the bill which later became, with slight modification, the Contribution Among Tortfeasors Act noted that a purpose in enacting the legislation was to "avoid the injustice often resulting under the common law." 1970 House Journal 437. That injustice resulted from the pre-existing rule that precluded a tortfeasor from obtaining contribution from a co-tortfeasor. *See Arctic Structures, Inc. v. Wedmore,* 605 P.2d 426, 430 (Alaska 1979).

**16.** The court in *C&L Rural Electric Cooperative Corp. v. Kincaid,* 256 S.W.2d 337, 339, 340 (Ark.1953), noted this important distinction between an action based on the Uniform Contribution Act and one based on a contractual indemnity provision.

**17.** We note that the statute provides that its terms are "not [to] impair any right or [sic] indemnity under existing law." AS 09.16.-010(f). *See also American Motorcycle Ass'n v. Superior Court,* 20 Cal.3d 578, 146 Cal.Rptr. 182, 197, 578 P.2d 899, 914 (Cal.1978) (construing an identical California provision as not precluding a judicially created right of partial indemnity or contribution); while we refused to adopt this judicial doctrine of equitable, partial

thus we hold that the contract, not the statute, governs in this instance.

In summary, we hold that the indemnity provision contained in AEL&P's franchise agreement limits its liability to that caused by its negligence, whatever percentage that is found to be. Thus, a contract executed in good faith, providing for a measure of indemnity liability, is not precluded by AS 09.16.010.[18]

AFFIRMED.

indemnity in *Arctic Structures, Inc. v. Wedmore*, 605 P.2d 426, 435 n.27 (Alaska 1979), we see no reason why parties cannot, in good faith, agree on an alternative measure so long as the result is not unconscionable.

18. We note, however, that AS 45.47.010 prohibits, after 1975, indemnity provisions in certain construction contracts which purport to indemnify the indemnitee for the latter's sole negligence or willful misconduct.