STEPHAN & SONS, INC., Appellant,

v.

MUNICIPALITY OF ANCHORAGE,
Appellee.

No. 5102.

Supreme Court of Alaska.

June 5, 1981.

Robert L. Eastaugh, Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for appellant.

Kenneth P. Jacobus and James M. Powell, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

RABINOWITZ, Chief Justice.

This dispute is between one defendant (the Municipality of Anchorage, hereafter the Municipality) and one former defendant (Stephan & Sons, Inc., hereafter S&S) in a separate damages action brought by the mother of Walter DeHusson. The issue is whether S&S, a construction contractor, had a duty to defend the Municipality in the DeHusson action. The original DeHusson action was dismissed before the reply brief in the case at bar was filed, but the defense cost issue is still extant. The superior court granted summary judgment to the Municipality. For the reasons given below, we affirm.

## A. Facts

The case stems from construction work done by S&S for the Municipality on the Westchester Lagoon spillway structure. The structure was originally built by the Kelly Construction Company, according to specifications set by the Municipality. In 1972, the Municipality contracted with S&S for street improvements to Arctic Boulevard. Subsequently, a 1973 change order to this contract was made, according to which S&S was to do some additional work on the Westchester Lagoon spillway structure, including repairing some ice damage to the south wing wall, repairing the fish ladder, grading the earthen dike, and other miscellaneous matters. S&S subcontracted the spillway repair work to Tunnel Bay Construction Company, retaining for itself the earth work in the lagoon bed and dike.

On July 27, 1973, Walter DeHusson and one Randall Redmond were playing on the spillway structure, apparently guiding boards down the spillway.[1] At first, Walter, hanging on to a vertical pipe, pushed the boards in the water with his feet to guide them into the spillway. This did not work with one board, and Walter, letting go of the pipe, walked to the other end of the board and started stomping on it. Walter fell into the water, was swept into a culvert, and drowned.[2]

About two years after the accident, Walter's mother filed suit against the Municipality, S&S, Tunnel Bay, and Kelly Construction. The complaint (as amended) included allegations that S&S and Tunnel Bay were negligent in not installing a fence, in not securely covering the hole made in the grating on top of the structure, in not installing grating over the flood gate mouths and other open areas of the structure, and in not installing warning signs around the area. In a ruling which was on appeal to this court, *DeHusson v. Stephan & Sons Construction Co.*, File No. 5231, S&S was awarded summary judgment on the ground that there was no evidence of any negligence on its part. Obviously, the parties disagree on the correctness of this ruling. Tunnel Bay remained a defendant in the DeHusson suit.

Subsequently, the Municipality instituted the present action for declaratory judgment against S&S, alleging that S&S was required to defend the Municipality in the DeHusson action, and to indemnify the Municipality for its defense costs and any damages, under the following contractual provision:

10.15 *HOLD HARMLESS CLAUSE*

The contractor shall indemnify, save and hold the City harmless, and defend the City at the contractor's sole cost and expense against any claim or liability for any injury to any person or persons or a

---

1. The Municipality, in its statement of facts, asserts that the boards were probably concrete forms which had been left at or near the construction site, but this is not supported by the record. S&S objects to this aspect of the Municipality's statement of facts.

2. The parties stress different aspects of the culpability for this tragedy. S&S emphasizes that the structure as originally designed and built contained no grating over the culverts which would have prevented persons from being swept in. The Municipality emphasizes that Walter had gained access to the front of the spillway through a hole in the metal grating on top of the structure, cut by Tunnel Bay as part of its construction; but this latter fact is unsubstantiated by the record as it reaches us. Since we conclude, *infra*, that the "true facts" are not material here, we need not resolve these factual issues.

damage to any property or any other liability arising or resulting from the construction of any improvement, or any part thereof, or from any other performance by the contractor or his subcontractors under this contract. The liability assumed by the contractor pursuant to this section shall include but not be limited to all claims brought by any person for work or materials furnished for construction of improvements under this contract. S&S denied that the clause required it to defend the Municipality. It also attacked the clause on statutory and public policy grounds.

The Municipality entered a motion for complete summary judgment on June 26, which the superior court denied. One year later, the Municipality moved for reconsideration on the issue of S&S's duty to defend, and the superior court set aside its previous ruling and ordered S&S to take up the Municipality's defense in the underlying action. S&S moved for relief from and reconsideration of that order, both of which motions the superior court denied after oral argument. The Municipality then moved for partial summary judgment for the costs and attorney's fees incurred thus far in the DeHusson suit, which was granted over S&S's opposition. It is from this order (as amended) that this appeal is taken.

During the pendency of this appeal, the original DeHusson action in the superior court and, consequently, the appeal as to S&S in this court, have been dismissed.

### B. The Contractual Duty to Defend

The initial issue we must resolve is whether the contractual duty of S&S to defend the Municipality is to be defined solely by the allegations in the DeHusson complaint, or whether we must look beyond the complaint to the "true facts" to determine whether these facts in actuality fit the situation contemplated by the clause. Only if we adopt the latter view must we turn to an assessment of the facts.

S&S's position is that the duty to defend and the duty to indemnify come into play together or not at all, since they are both conditioned on the same language in the contract.[3] Its claim is that only if it is found that S&S had a duty to indemnify the Municipality for any liability in the DeHusson action can it also be found that S&S had a duty to defend the Municipality. Since the superior court granted summary judgment on the duty to defend issue but not on the duty to indemnify, S&S argues, its ruling is logically inconsistent. According to S&S, if material factual issues yet to be resolved will determine the extent of the duty to indemnify, these same factual issues must be resolved to determine the extent of the duty to defend.

The Municipality's position is that the duty to defend is determined by looking to the allegations in the complaint, whereas the duty to indemnify is determined by the ultimate findings of fact. It argues that the court below only had to look at the DeHusson complaint; if it included allegations that S&S, or its subcontractor, Tunnel Bay, was negligent, then S&S had a duty to defend. Since the DeHusson complaint indisputably contained such allegations, the Municipality insists that no genuine issue of material fact was presented as to the duty to defend.

We have already held in two contexts that there may be a duty to defend even if there is no duty to indemnify: insurance cases[4] and implied indemnity cases.[5] We have not addressed this particular question in the construction contractor context. Other jurisdictions have considered this question with mixed results: some cases

---

**3.** In its reply brief, S&S conceded that there were some circumstances in which the duty to defend could be broader than the duty to indemnify, but insists that this case does not present those circumstances.

**4.** *See Continental Ins. Co. v. United States Fidelity & Guar. Co.*, 528 P.2d 430, 434–35 (Alas-

ka 1974). S&S seeks to distinguish the insurance case law on the ground that the insurance policies promise to defend even "groundless, false, or fraudulent" claims.

**5.** *See Heritage v. Pioneer Brokerage & Sales, Inc.*, 604 P.2d 1059, 1067 (Alaska 1979).

favor the Municipality's position,[6] others the position urged by S&S.[7] To the extent that it makes sense to find majority and minority rules in this area, it appears that the Municipality has the weight of authority on its side.

Two general principles emerge from the case law from other jurisdictions we have examined. First, the question must be resolved by examination of the wording of the contract.[8] The second point is a less obvious one. Of the cases ruling in favor of S&S's position, virtually all have been from jurisdictions which apply some variant of a "strict construction" rule to contracts in which an indemnitee is attempting to recover indemnity against losses caused by its own negligence; and indeed, in all three cases we have cited, a claim for actual indemnity was refused along with (or prior to) the refusal of the claim for defense costs.[9] Although this concern was not articulated, it appears that the courts in those cases were more concerned with the problem of recovery by a negligent party in light of the "strict construction" rule than they were concerned about whether the duty to defend might be broader than the duty to indemnify. To the extent that Alaska has rejected the "strict construction" rule, the persuasive value of these cases is diminished.[10]

With these considerations in mind, we turn to an examination of the language here. S&S's principal argument is that the language used to trigger the two duties is identical: "The contractor shall indemnify ... and defend the City ... against any claim or liability for any injury ... or any other liability arising or resulting from the construction ... by the contractor or his subcontractors under this contract."

Only two of the cases cited to us by the parties have analyzed an identity of language argument, and those cases reached different results. *Smith v. Chevron Oil Co.,*

6. *See Titan Steel Corp. v. Walton,* 365 F.2d 542 (10th Cir. 1966); *B&G Elec. Co. v. G. E. Bass & Co.,* 252 F.2d 698 (5th Cir.), *cert. denied,* 357 U.S. 931, 78 S.Ct. 1372, 2 L.Ed.2d 1371 (1958); *Bituminous Ins. Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 427 F.Supp. 539 (E.D.Pa.1976); *Vizcarrondo v. American Export Isbrandtsen Lines, Inc.,* 327 F.Supp. 976 (S.D.N.Y.1971); *Williams v. California Co.,* 289 F.Supp. 376 (E.D.La.1968); *Seneca v. California Oil Co.,* 244 F.Supp. 350 (W.D.La.1964); *Blain v. Sam Finley, Inc.,* 226 So.2d 742 (Miss.1969); *List & Clark Constr. Co. v. McGlone,* 296 S.W.2d 910 (Mo.App.1956) (dicta); *St. Paul Fire & Marine Ins. Co. v. Crosetti Bros.,* 256 Or. 576, 475 P.2d 69 (1970).

7. *Smith v. Chevron Oil Co.,* 517 F.2d 1154 (5th Cir. 1975); *Florida Power & Light v. Nat Harrison Associates, Inc.,* 223 So.2d 336 (Fla.App.), *cert. denied,* 234 So.2d 122 (Fla.1969); *Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc.,* 281 N.W.2d 838 (Minn. 1979).

8. "[W]here the contract of indemnity expressly includes attorneys' fees and legal costs in the matter indemnified, the extent to which the indemnitee is entitled to recover such fees and costs depends upon the terms of the particular contract." *Blain v. Sam Finley, Inc.,* 226 So.2d 742, 745 (Miss.1969).

9. "[T]he indemnity agreement between Chevron and Ocean Sciences unquestionably does not provide for indemnification for the indem-

nitee's own negligence in the clear and specific language required by Louisiana law." *Smith v. Chevron Oil Co.,* 517 F.2d 1154, 1157 (5th Cir. 1975).

In an earlier decision in the *Nat Harrison* case, denying the indemnification claim, the Florida Supreme Court said, "It is the general principle of law that contracts of indemnification which attempt to relieve a party of its own negligence are not looked upon with favor. In order for such a contract to be so construed, it must be clear and unequivocal." *Nat Harrison Assoc., Inc. v. Florida Power & Light Co.,* 162 So.2d 298, 299 (Fla.App.), *cert. denied,* 166 So.2d 754 (Fla.1964) (citations omitted).

And in *Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc.,* 281 N.W.2d 838, 842 (Minn.1979), the court also ruled against the indemnity claim saying, "Indemnity agreements are to be strictly construed when the indemnitee ... seeks to be indemnified for its own negligence. There must be an express provision in the contract to indemnify the indemnitee for liability occasioned by its own negligence; such an obligation will not be found by implication."

10. In *Manson-Osberg Co. v. State,* 552 P.2d 654, 659 (Alaska 1976), we said, "The better rule in modern cases is that the unambiguous language of an indemnity clause as 'reasonably construed' should be given effect, even if it does not contain words specifying indemnity for the indemnitee's own negligence."

517 F.2d 1154 (5th Cir. 1975), took the position urged by S&S here: that identical language means the duties are coterminous.[11] *Bituminous Insurance Co. v. Pennsylvania Manufacturers' Association Insurance Co.*, 427 F.Supp. 539 (E.D.Pa.1976), took the position of the Municipality: that, although the language is identical, the duties can be different.[12]

S&S argues that the identity of language for the two duties means that, if we find a duty to defend here, we must also logically find a duty to indemnify, since they come into play together or not at all; and that imposing a duty to indemnify before the true facts are found is illogical, as the court below recognized in refusing to grant summary judgment on the duty to indemnify issue.

■ We think the wording of the contract here clearly supports the Municipality's position, and refutes S&S's argument that the two duties come into play together or not at all. The key words are "indemnify . . . and defend" and "claim or liability." We think that the most reasonable reading of the clause is that S&S agreed to defend against claims and to indemnify for liabilities.

"Claim" clearly connotes assertion of a legal right, rather than legal recognition or enforcement of that right.[13] One does not

---

11. The court reasoned as follows:

Chevron argues, however, that even if it is not entitled to indemnification for the injury damages under the contract, it is entitled to reimbursement from Ocean Sciences for the cost of defending Smith's claim. In essence, Chevron argues that the agreement 'to defend and hold Company indemnified . . .' is severable and that Ocean Sciences must defend it against claims by Ocean Sciences' employees, regardless of Chevron's negligence.

Such a construction of the agreement in this case does not accord with the plain, ordinary and popular sense of the language of the contract. Under the contractual provision, Ocean Sciences agreed to defend and to indemnify Chevron against claims of Ocean Sciences' employees for injuries which were connected with Ocean Sciences' services to Chevron. There is no separate paragraph controlling the legal defense of claims. All is contained in one paragraph and would seem to be subject to the same rule. Without the requisite clear language for Ocean Sciences to indemnify Chevron for the injury damages, in view of Chevron's negligence, there is no contract language to indicate an intent for Ocean Sciences to provide a legal defense for Chevron against its negligent acts.

*Smith v. Chevron Oil Co.*, 517 F.2d 1154, 1157–58 (5th Cir. 1975) (citations omitted).

12. The court in *Bituminous* relied primarily on insurance case law:

[The contractual language governing the duty to defend] is no different than the language applicable to [the indemnitor's] duty to indemnify, and logically it would seem to require the conclusion that [the indemnitor's insurer] is under no duty to defend [the indemnitee] against charges that [the indemnitee] was independently at fault. That is not the case, however.

I have earlier noted that several allegations of the Common Pleas complaints assert that [the indemnitee] is liable for damage caused by [the indemnitor's] execution of the work and that [the indemnitor's insurer] is obligated to defend [the indemnitee] against such allegations. The Pennsylvania Supreme Court (as have courts of other jurisdictions) has held that where the insurance contract obligates the insurer to defend the insured against some of the claims in the complaint, the insurer must also defend against the claims which are not within the coverage of the policy until the insurer can confine the possibility of recovery to claims outside the coverage of the policy. I conclude, therefore, that [the indemnitor's insurer] is obligated to defend [the indemnitee] against all of the allegations in the Common Pleas complaint. *Bituminous Ins. Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 427 F.Supp. 539, 554–55 (E.D. Pa.1976) (citations omitted). It should be noted that the language the court was interpreting was in a construction contract, but that the ultimate duty to defend was placed on the indemnitor's insurer and not directly on the indemnitor.

13. "Ordinarily, a claim connotes a controversy not an admitted liability." *Grant v. United States*, 92 F.Supp. 369, 374 (E.D.N.C.1950). "A claim connotes an assertion of a legal right, as distinguished from a recognition of that right." *San Pedro Properties, Inc. v. Sayre & Toso, Inc.*, 203 Cal.App.2d 750, 21 Cal.Rptr. 844, 847 (1962).

The word 'claim' is comprehensive. 'It is in a just, juridical sense a demand of some matter as of right made by one person upon another, to do, or to forbear to do, some act or thing as a matter of duty.' The term 'demand,' according to Lord Coke, 'is the largest word in law, except "claim" . . . .'

indemnify until there is actually liability; the existence of a claim alone does not call for indemnification. Since the inclusion of the word "claim" makes it clear that S&S undertook some responsibility with regard to claims, and since it is illogical to link the term "indemnify" with "claims," it follows that the obligation undertaken with respect to claims was an obligation to defend.

By the same token, one cannot "defend" against liabilities; if liability has been established, the time for defense is past. Therefore, the obligation S&S must have undertaken with respect to "liabilities" was one to indemnify.

The differing nature of these two duties means that if, as S&S asserts, the facts were to show that the actual injury did not arise or result from the construction work, the duty to defend would be different from the duty to indemnify. Under that factual situation, any liability imposed would not be for an injury arising or resulting from the construction work; and if there were no "liability . . . for any injury arising or resulting from the construction," then there would be no duty to indemnify. This does not mean, however, that there was no "claim . . . for any injury arising or resulting from the construction." The "true facts" affect only the existence of actual liability, not the claim.

Thus, despite the identity of language here, we see nothing inconsistent in ruling that there is a duty to defend at all points of the case during which there is a claim for injury arising or resulting from the construction work, whether or not this claim is eventually borne out, but that there is no duty to indemnify unless the liability in fact arose or resulted from the construction work.[14]

We think that the duty to defend attaches as long as the principal case continues to include a cause of action "arising or resulting out of" the construction work.[15] In this case, Tunnel Bay, the subcontractor, was still a party to the principal DeHusson suit up until the point of settlement; thus, the case continued to include a cause of action alleging negligence on the part of Tunnel Bay, and this clearly encompasses a claim arising or resulting from the construction work.[16] Having reached this con-

*Delmoe v. Long*, 35 Mont. 139, 88 P. 778, 781 (1907) (citations omitted).

14. Thus, we must reject the reasoning in *Smith v. Chevron Oil Co.*, 517 F.2d 1154 (5th Cir. 1975). Again, it may be significant that *Smith* involved Louisiana law, which applies a "strict construction" rule to agreements indemnifying the indemnitee against its own negligence, which rule perhaps also affects the interpretation of agreements involving the duty to defend. *See* notes 9 and 10, *supra*.

15. Both parties raise arguments about the significant conflict of interest problems that would be presented were one attorney to represent both S&S and the Municipality in the DeHusson suit. We note that there are various alternative solutions to this problem. *See Bituminous Ins. Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 427 F.Supp. 539, 555 (E.D.Pa.1976) (indemnitor and indemnitor's insurer must provide separate counsel to protect indemnitor's and indemnitee's interests); *St. Paul Fire & Marine Ins. Co. v. Crosetti Bros., Inc.*, 256 Or. 576, 475 P.2d 69, 71 (1970) (although indemnitor who defends indemnitee in original action is ordinarily estopped from contesting any facts decided in original case, estoppel operates only if no conflict of interest between indemnitor and indemnitee in original case). We do not find it necessary to resolve these problems to decide this case. Since the original action has now been dismissed, there is no reason for us to express any opinion on the potential conflicts of interest presented.

16. Thus, we need not decide here what the correct result would have been had Tunnel Bay also obtained summary judgment in the original suit, or whether S&S's duty to defend would have extended to the period during which it was defending its summary judgment on appeal. We do note that a finding in the original action that a contractor must be exonerated because not negligent, or because his negligence was not a proximate cause, would not necessarily preclude a finding that the injury nonetheless "arose or resulted from" the construction activity.

We are in general agreement with the Municipality's assertion that "arising or resulting from" should be broadly interpreted. *See State Farm Mut. Auto. Ins. Co. v. LaSage*, 262 Ark. 631, 559 S.W.2d 702, 703 (1978) ("[W]e take the position that 'arising out of' cannot be construed to mean 'proximately caused by.'"), and cases cites therein; *O'Dwyer v. Manchester Ins. Co.*, 303 So.2d 347, 348 (Fla.App.1974) ("We are mindful that 'arising out of' is not

clusion, we need not address the parties' arguments as to what the "true facts" show.[17]

### C. Public Policy Arguments

#### 1. The public service exception

█ S&S makes two public policy arguments which it asserts would void both the duty to indemnify and the duty to defend.

First, relying on *Manson-Osberg Co. v. State*, 552 P.2d 654, 659–60 (Alaska 1976), and *Northwest Airlines, Inc. v. Alaska Airlines, Inc.* 351 F.2d 253 (9th Cir.1965), *cert. denied*, 383 U.S. 936, 86 S.Ct. 1068, 15 L.Ed.2d 853 (1966), S&S argues that enforcement of the contract would tend to promote breach of a duty owing to the public at large. These cases support the proposition that, where the indemnitee is charged with a duty of public service (*e.g.*, a common carrier) and the indemnification is for some neglect in the performance of that duty, the indemnity agreement should not be enforced, as the indemnitee's "relaxed vigilance" in fulfilling such duties, because of the indemnification, might inure to the detriment of society at large.

The Municipality contends that this case is controlled by *Burgess Construction Co. v. State*, 614 P.2d 1380 (Alaska 1980). That case also involved an agreement by a construction company to indemnify a governmental body, and the court enforced the indemnity clause. We said:

> Burgess first argues, relying on the language of *Manson-Osberg* emphasized above, that since in this case enforcement of the indemnity clause would tend to promote breach of a duty which the State owed to the public at large, the clause

should not be enforced. The public duty exception to which we referred in *Manson-Osberg* is generally held applicable to public utilities and common carriers, and is based on two principles. The first is that those to whom the exception applies should guard against the consequences of their negligence at all times; indemnity agreements, or prospective releases, are thought to eliminate their incentive to do so. The second is that it is thought unfair to allow public service entities to impose liability-avoiding agreements on those they are supposed to serve, since the latter have no choice but to accept such agreements. Because we believe that neither principle applies here, we reject Burgess' arguments that this case falls within the public duty exception.

*Id.* at 1381–82 (footnotes omitted). The Municipality is correct in asserting that the reasoning in *Burgess* controls this aspect of the case and requires rejection of S&S's first public policy argument.

█ 2. The statutory public policy argument S&S also argues that the clause is void under former AS 45.47.010,[18] which reads:

> *Indemnification agreements contra to public policy.* A provision, clause, covenant, or agreement contained in, collateral to, or affecting any construction contract which purports to indemnify the promisee against liability for damages for (1) death or bodily injury to persons, (2) injury to property, (3) design defects or (4) any other loss, damage or expense arising under (1), (2), or (3) of this section from the sole negligence or wilful misconduct of the promisee or the promisee's

---

synonymous with the words, caused by,' but is given a broader meaning in determining whether coverage applies."); *Baca v. New Mexico State Highway Dept.*, 82 N.M. 689, 486 P.2d 625, 628 (App.1971) ("The words 'arising out of' are very broad, general and comprehensive terms, ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.' ").

**17.** We are in general agreement with S&S in its assertion that the presence of language in insurance policies promising to protect against

"groundless, false or fraudulent" claims, *see* note 4 *supra*, creates a broader duty to defend. Thus, we do not intend to indicate that all of our rulings on the duty to defend in the insurance context are applicable here. *See, e.g., Continental Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 288–91 (Alaska 1980) (limitation on insurer's ability to reserve its right to repudiate the policy while defending suit unless insured consents to such reservation).

**18.** This provision now appears at AS 45.45.900.

agents, servants or independent contractors who are directly responsible to the promisee, is against public policy and is void and unenforceable; however, this provision does not affect the validity of any insurance contract, workmen's compensation or agreement issued by an insurer subject to the provisions of AS 21.

This statute became effective September 23, 1975, ch. 155, § 1, SLA 1975, and governs contracts executed on or after that date.[19] Contracts executed before that date are governed by the rule we announced in *Burgess Construction Co. v. State*, 614 P.2d 1380, 1382 (Alaska 1980) (citations omitted):

> Most modern authorities hold that an indemnity clause such as the present one is effective to shift responsibility for an accident where the indemnitee is negligent and the indemnitor is not.... '[T]here is no essential public policy impediment to an indemnitor undertaking to indemnify the indemnitee in respect of the indemnitee's own negligence....'

Since this contract, like the one in *Burgess*, was entered into prior to the statute's effective date, it is governed by the *Burgess* rule rather than by the statute.

Since the superior court judge correctly concluded that there were no issues of material fact here, and since there are no public policy considerations applicable to this case which dictate a contrary result, the judgment of the superior court is affirmed.[20]

---

**19.** This is in accordance with the general rule that it is "the law in force at the time [a contractual transaction] is consummated and made effectual that must be looked to as determining its validity and effect." *Memphis & Little Rock R.R. Co. v. Berry*, 112 U.S. 609, 623, 5 S.Ct. 299, 305, 28 L.Ed. 837, 842 (1884). *See also National Dairymen Ass'n v. Dean Milk Co.*, 183 F.2d 349, 354 (7th Cir.), *cert. denied*, 340 U.S. 876, 71 S.Ct. 122, 95 L.Ed. 637 (1950); *Tom P. McDermott, Inc. v. Bennett*, 395 P.2d 566, 570 (Okl.1964). An agreement valid when made generally cannot be rendered invalid by a subsequent act of the legislature. *Koshkonong v. Burton*, 104 U.S. 668, 678, 26 L.Ed. 886, 890 (1882); *Stephens v. Southern Pac. Co.*, 109 Cal. 86, 41 P. 783, 786 (1895).

**20.** In its reply brief, S&S for the first time contends that, even if we find the summary judgment correct we must remand so that the Municipality's defense costs can be apportioned between covered and uncovered claims against the Municipality. S&S cites no authority for this proposition, and did not raise it either in the points on appeal or in its opening brief. Since neither the court below nor appellees here were given an opportunity to address the issue, we will not consider the argument.