C.J.M. CONSTRUCTION, INC., an
Alaska Corporation, Appellant,

v.

CHANDLER PLUMBING & HEATING,
INC., an Alaska Corporation, Appellee.

No. S–250.

Supreme Court of Alaska.

Aug. 9, 1985.

Monica Jenicek, Brian Boyd, Lane, Powell, Barker & Hicks, Anchorage, for appellant.

Kenneth D. Lougee, Dennis M. Bump, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This case involves the effectiveness of an express indemnity clause in a construction contract. The trial court ruled that C.J.M. Construction Company, Inc. was contractually obligated to indemnify Chandler Plumbing & Heating, Inc. We affirm.

## I. FACTS AND PROCEEDINGS

In May 1975, Chandler entered into a contract with the University of Alaska to construct laboratory facilities, the O'Neill Building, on the Fairbanks campus. Chandler entered into a subcontract with C.J.M. In accordance with the subcontract, C.J.M. made concrete saw penetrations in the floors of the O'Neill Building. About two months after C.J.M. completed the pen-

etrations, Jerome Adams, an electrician employed by the university, fell through one of the unbarricaded holes and was injured.

Adams filed a complaint alleging that Chandler and C.J.M. were negligent. Chandler moved for summary judgment, claiming it was not liable for C.J.M.'s negligence. The trial judge partially granted the motion, holding that Chandler was not liable under *respondeat superior* for the negligence of its independent contractor, C.J.M. However, Chandler could still be held liable for its failure to discover the holes left open by C.J.M.

While the personal injury suit by Adams was pending, Chandler filed a separate action seeking a declaratory judgment that the indemnity provision of its contract obligated C.J.M. to indemnify Chandler. Judge Van Hoomissen ruled that the indemnity clause required C.J.M. to compensate Chandler for liability caused by C.J.M.'s negligence, but did not cover Chandler's own negligence. Before the Adams' trial began, Chandler dismissed its declaratory judgment action without prejudice.

C.J.M. settled with Adams. In the Adams' trial, Chandler admitted negligence and proximate cause, contesting only the issues of comparative negligence and damages. After trial and settlement with Adams, Chandler filed the present action seeking indemnity from C.J.M. under the contract.

Chandler moved for summary judgment on the issue of indemnity, but Judge Blair initially denied the motion. Chandler then moved for reconsideration. At the hearing on the summary judgment motion, Judge Blair reversed his prior ruling on the indemnity clause, holding that C.J.M. was obligated to indemnify Chandler.[1] C.J.M. appealed.

---

1. C.J.M. argues that Judge Blair was bound to follow Judge Van Hoomissen's interpretation of the indemnity clause under the principle of *res judicata*. However, the original declaratory judgment action was dismissed without prejudice, meaning that there was never a judgment to which *res judicata* could attach.

C.J.M. also argues that Chandler should be bound under the doctrine of law of the case as

to the court's previous interpretation of the indemnity clause. *Stepanov v. Gavrilovich,* 594 P.2d 30, 36 (Alaska 1978). We find this claim meritless. Judge Blair correctly used the power of the superior court to revise or reverse interlocutory rulings deemed erroneous. Alaska R.Civ.P. 54(b); Alaska R.Civ.P. 56(d).

## II.  DISCUSSION

### A.  The Scope of the Indemnity Clause

In its construction contract, C.J.M. agreed in clause (k):

> To indemnify and save harmless the CONTRACTOR [Chandler] from and against any and all suits, claims, actions, losses, costs, penalties, and damages, of whatsoever kind or nature, including attorney's fees, arising out of, in connection with, or incident to the SUBCONTRACTOR'S [C.J.M.] performance of this SUBCONTRACT.

Despite the broad language of clause (k), C.J.M. claims that the contract does not require it to indemnify Chandler for Chandler's negligence.[2]

In *Manson-Osberg v. State,* 552 P.2d 654 (Alaska 1976), we adopted a reasonable construction of indemnity agreements. We stated:

> The better rule in modern cases is that the unambiguous language of an indemnity clause as "reasonably construed" should be given effect, even if it does not contain words specifying indemnity for the indemnitee's own negligence.

*Id.* at 659. We reasoned that an indemnity clause is no longer so unusual in modern commerce "as to require such specific mention of the indemnitee's conduct as being within the scope of the indemnifying obligation." *Id.* In addition, we pointed to the widespread contemporary use of insurance as a means of allocating risks.[3] *Id.*

We have subsequently followed the reasonable construction rule in interpreting indemnity clauses in which an indemnitee is attempting to recover indemnity against losses caused by its own negligence. In *Burgess Construction Co. v. State,* 614 P.2d 1380 (Alaska 1980), two employees of Burgess were killed while obtaining gravel

for a state construction project when their front-end loader went out of control on an icy state highway. The icy highway was not part of the construction project. In a wrongful death action, the state was found 85% responsible and the employee 15% and the state settled with the employees' estates.

In a subsequent action against Burgess for indemnity, the state's motion for summary judgment was granted. The contract's indemnity clause required Burgess to "indemnify and save harmless" the state from all claims brought because of injuries received by any person "on account of the operation of the said contractor." We affirmed the superior court's grant of summary judgment, rejecting Burgess' argument that the indemnity clause should not be given effect because the state was negligent and it was not.

> *If we were to assume that Burgess was fault free, the indemnity clause would still be effective as written.* Most modern authorities hold that an indemnity clause such as the present one is effective to shift responsibility for an accident where the indemnitee is negligent and the indemnitor is not.

*Id.* at 1382 (emphasis added). We also stated that it did not matter who was in control of the area where the accident took place. We reasoned:

> The State could have purchased liability insurance protecting it from claims arising out of Burgess' contract operation. Instead, the State chose to protect itself from the same claims by requiring indemnification from Burgess. Such protection is not free, because Burgess' anticipated costs of obtaining insurance to cover the State's call for indemnification

---

2.  To support its position, C.J.M. cites *Jones v. Strom Construction Co.,* 84 Wash.2d 518, 527 P.2d 1115, 1118 (1974). In that case, the Washington court applied a strict construction to interpret the scope of an indemnity clause. Since Alaska has rejected the strict construction rule in interpretation of indemnity clauses, the persuasive value of *Jones* is diminished. *Ste-*

*phan & Sons v. Municipality of Anchorage,* 629 P.2d 71, 74 (Alaska 1981).

3.  In fact, the construction contract in this case required C.J.M. to provide insurance coverage before commencing any work under the subcontract.

can be included as a part of its bid on the project.

*Id.* at 1383.

C.J.M. seizes on a dictum in *City and Borough of Juneau v. Alaska Electric Light & Power Co.*, 622 P.2d 954 (Alaska 1981), as support for its assertion that provisions exempting a party from liability for the party's own negligence must be clearly set forth. In *Juneau,* a pedestrian was injured when he fell while descending a stairway owned and maintained by the city. The city had failed to replace several steps on the stairway and had not barricaded it. In addition, Alaska Electric's street light over the stairway was burned out. A jury found the city 60% negligent and Alaska Electric 20% negligent. When the trial court allocated damages according to comparative fault, the city appealed, claiming it should be fully indemnified by Alaska Electric.

The clause in question stated:

The Company [Alaska Electric] shall save the City harmless from all loss sustained by the City on account of any suit, judgment, execution, claim, or demand whatsoever, · *resulting from negligence on the part of the company, its officers, agents, servants and employees,* in the construction, operation or maintenance of its electrical system in the City, and operations appurtenant thereto.

*Id.* at 955 (emphasis in original). The city contended that this provision required Alaska Electric to indemnify the city for all losses stemming from the sole or concurrent negligence of Alaska Electric. We distinguished the clause in *Juneau* from *Manson-Osberg* and *Burgess.* In *Juneau* the scope of the indemnity clause was modified by the phrase "resulting from negligence on the part of the company." This

indicated a clear intent to restrict Alaska Electric's liability to claims directly attributable to its negligence. We held that the indemnity clause in *Juneau* could not be reasonably construed to require that Alaska Electric indemnify the city for the city's own negligence. *Id.* at 956.

After this holding, we noted:

This result is in line with the oft-stated principle that "provisions exempting a party from liability for the party's own negligence must be clearly set forth."

*Id.* at 956 n. 5 (quoting *Dresser Industries v. Foss Launch & Tug Co.*, 560 P.2d 393, 395 (Alaska 1977)).[4] This footnote serves as fodder for C.J.M.'s argument. However, the dictum in *Juneau* actually states the principle from the strict construction of indemnity contracts. This principle was rejected in *Manson-Osberg* and *Burgess,* in which we held that broad general indemnity clauses as reasonably construed would cover the indemnitee's own negligence. Therefore, we reject the *Juneau* dictum as inconsistent with the reasonable construction of indemnity clauses.

The case of *Earthmovers of Fairbanks, Inc. v. State*, 644 P.2d 238 (Alaska 1982), resolved any possible conflict between *Burgess* and *City and Borough of Juneau.* In *Earthmovers* the decedent's estate filed a wrongful death action against the contractor and the state. The state moved for summary judgment against the contractor on the basis of the indemnity clause. The trial court analyzed two indemnity clauses in the construction contract. The first clause limited the contractor's indemnity liability only to judgments rendered against the state for the contractor's own negligence, similar to the provision in *City and Borough of Juneau.* The second clause

4. Footnote 5 in *Juneau* quotes from *Dresser Industries v. Foss Launch & Tug Co.*, 560 P.2d 393. In *Dresser,* the bailor agreed to provide "its own insurance coverage" on barite stored in a vessel. When the vessel sank, we held that a provision requiring the bailor to provide its own insurance did not absolve the defendant bailee from liability for its own negligence. The court did state that provisions exempting a party from liability for its own negligence must be clearly set forth. However, *Dresser* involved a case of bailment. The court mentioned that the general rule in bailment is that a bailee is liable for any loss of injury to the bailed goods caused by his failure to exercise the degree of care of a reasonably careful owner. The general rule may be modified by a contractual agreement, but the contract must specifically state any exception to the general rule of bailment. *Id.* at 395.

mirrored the *Burgess* clause. The court held that this second clause expanded the contractor's duty by requiring it to indemnify the state for the negligence of any party, including the state. We affirmed the trial court's grant of summary judgment. *Earthmovers of Fairbanks* at 240.

The reasonable construction of indemnity clauses established in *Manson-Osberg* and *Burgess* applies to the indemnity clause in this case. Since there is no dispute about the surrounding circumstances of this contract, the interpretation of its language is a question of law for the court to determine. *Earthmovers of Fairbanks, Inc. v. State,* 644 P.2d at 239.

William Sager, Chandler's service superintendent, testified that Chandler's personnel had expanded the concrete penetrations in the O'Neill Building by a few inches several days before Adams' accident. In addition, C.J.M. contends that the construction contract did not require it to cover the holes or to post warning signs. In fact, C.J.M. believed that duct work would fill the holes within a day or two after C.J.M. completed the penetrations. However, C.J.M.'s worker testified that he did not cover the holes, which was contrary to C.J.M.'s normal practice.

In spite of the apparent conflict in these facts regarding causation, there is no dispute that the Adams' accident was caused *either* by C.J.M.'s negligence in not covering the holes *or* by Chandler's negligence in failing to supervise or by enlarging the holes. If the indemnity clause (k) is broad enough to include both C.J.M.'s and Chandler's negligence, there is no dispute about causation.

Comparison of clause (k) with the indemnity clause in *Burgess* leads to the conclusion that clause (k) is also a broad, inclusive indemnity clause. In *Burgess* the

contractor agreed to indemnify the state from all claims brought "on account of the operations of said contractor." In the present case, C.J.M. agreed to indemnify Chandler against "any and all suits ... of whatsoever kind or nature ... arising out of, in connection with or incident to [C.J. M.'s] performance of this subcontract." We held that the indemnity clause in *Burgess* would shift responsibility for the accident even if the state had been negligent and Burgess had been free of fault. The same holding controls the present case. It is no longer necessary under Alaska law that an indemnity clause contain words specifying indemnity for the indemnitee's own negligence. *Manson-Osberg,* 552 P.2d at 659.[5] If C.J.M. wanted to limit its liability to its own negligence, C.J.M. could have inserted limiting language in its indemnity clause. *City and Borough of Juneau,* 622 P.2d at 956. Since the indemnity provision in this case did not contain a limiting clause, the trial court correctly ruled that C.J.M. was obligated to indemnify Chandler.

### B. Prejudgment Interest

C.J.M. argues that the judgment prepared by Chandler and entered by the superior court erroneously provided for 10.5% interest from June 1979 to the present. The applicable statute, AS 45.45.-010, does provide that the legal rate of interest is 10.5% per year. However, that rate did not take effect until July 1980. Therefore, the prejudgment interest in this case should be calculated at the prior legal rate of 8% for the period from June 1979 to July 1980.

The decision of the superior court is AFFIRMED in part, REVERSED in part, and REMANDED to properly determine the amount of prejudgment interest.

---

**5.** Judge Blair also determined that C.J.M. had a duty to defend Chandler under clause (k) of the construction contract. We affirm. In the clause, C.J.M. agreed to "save harmless" Chandler "from and against any and all ... claims." This clause makes it clear that C.J.M. was obligated to defend Chandler before judgment.

"Claim" clearly connotes assertion of a legal right, rather than legal recognition or enforcement of that right.
*Stephan & Sons v. Municipality of Anchorage,* 629 P.2d at 75.

MATTHEWS, Justice, joined by COMPTON, Justice, dissenting.

In my view it is a fact question whether Adams's claim was one, to use the language of clause (k), "arising out of, in connection with, or incident to [C.J.M.'s] performance of this subcontract." This is a question of causation rather than fault and on the record before us it is one about which reasonable minds could differ.

The majority states that "there is no dispute that the Adams' accident was caused either by C.J.M.'s negligence in not covering the holes or by Chandler's negligence in failing to supervise or by enlarging the holes. If the indemnity clause (k) is broad enough to include both C.J.M.'s and Chandler's negligence, there is no dispute about causation." This reasoning is flawed. Clause (k) is broad enough to include some cases which are caused by Chandler's negligence. It does not cover all cases which are caused by Chandler's negligence, however, only those which arise out of, are connected with, or incident to C.J.M.'s performance of the subcontract.

The suggestion in the majority opinion that the result in *Burgess Construction Co. v. State*, 614 P.2d 1380 (Alaska 1980) controls the determination of cause is plainly wrong. The claimants in *Burgess* were personal representatives of employees of the contractor who were killed while working on the contract. There was thus no doubt that the claims were "on account of the operations of the said contractor." 614 P.2d at 1381.

I would reverse the judgment of the superior court and remand this case for trial on the issue of causation.