**484**

**OTIS ELEVATOR COMPANY, Appellant,**

v.

**UNIVERSITY OF ALASKA, Appellee.**

**No. S–783.**

Supreme Court of Alaska.

Sept. 19, 1986.

Robert R. Gillanders, Lane, Powell, Barker & Hicks, Anchorage, for appellant.

Kenneth D. Lougee, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

**OPINION**

BURKE, Justice.

Otis Elevator Company ("Otis") appeals from a grant of summary judgment in favor of the University of Alaska ("University") in the University's action for damages. On appeal, the parties argue the scope of Otis' contractual duty to indemnify University for fire damage to an elevator maintained by Otis. The trial court found Otis liable under the indemnity clause in the parties' elevator maintenance agreement. We conclude that issues of material fact involving both the fire's cause and the scope of Otis' duty under the clause remain. Thus, we reverse and remand for trial.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In 1976, University invited Otis to bid on a contract to maintain twenty seven elevators on its Fairbanks campus. University attached a copy of the "General Terms and Conditions" applicable to the bid. This form contained both an indemnity and an acceptance clause. The indemnity clause read:

16. SAVE HARMLESS: [Otis] shall protect, indemnify, and save [the University] harmless from and against any damage, cost or liability for any or all injuries to persons or property arising from acts or omissions of [Otis], his em-

ployees, agents, or subcontracts howsoever caused.

The acceptance clause read:

19. ACCEPTANCE: This order expressly limits acceptance to the Terms and Conditions stated herein. All additional or different terms proposed by [Otis] are objected to and are hereby rejected, unless otherwise provided in writing by [University's] Purchasing Agent.

In its bid, Otis included its standard "Full Maintenance" agreement form. In it, Otis agreed to use "all reasonable care to maintain the [elevators] in proper and safe operating condition." Otis also agreed to "regularly and systematically examine, adjust, lubricate as required, and if conditions warrant, repair or replace" the elevator controller and other specified elevator hardware.[1]

Otis further stated that it assumed no responsibility for certain other equipment.[2] Otis' form also disclaimed responsibility for "renewals or repairs necessitated by reason of negligence or misuse of the equipment or by reason of any other cause beyond our control except ordinary wear and tear."[3]

Otis bid $2,995.00 a month. University accepted the bid by sending a written purchase order to Otis. In the purchase order, University stated that the maintenance

would be provided in accordance with both University's "General Terms and Conditions" and Otis' "Full Maintenance Agreement."[4]

In 1981, a fire damaged the controls of one of the elevators maintained by Otis, requiring extensive repairs. The cause of the fire remains disputed. University sued Otis, alleging in its complaint that Otis' failure to inspect, repair, or replace defective parts had caused the fire. Otis denied liability. University then moved for summary judgment, relying on Otis' duty to indemnify University under the agreement's "hold harmless" clause.

In the briefs and affidavits attached to its motion, University posited that highly flammable hydraulic fluid leaked and made contact with the elevator controller's electrical parts. University argued that Otis' negligent failure to discover the leak contributed to the fire.

In opposition, Otis submitted affidavits challenging University's explanation and positing two alternative theories of the fire's origin. State Elevator Inspector Dwayne Houck's affidavit claimed that a routine inspection nine days before the fire had revealed no hydraulic fluid leak. He then asserted that a defective solenoid control valve may have shorted out, causing the fire. Houck claimed that these valves rarely fail and that Otis probably could not

1. This equipment partially included:
   Pumps, Pump Motors, Operating Valves, Valve Motors, Motor Windings, Leveling Valves, Plunger Packings, Exposed Piping, Hydraulic Fluid Tanks. *Controller,* Leveling Devices and Cams, all Relays, Magnet Frames, Solid State Components, Resistors, Condensers, Transformers, Contacts, Leads, Timing Devices, Resistance for Operating and Motor Circuits, Operating Circuit Rectifiers. . . .
   (Emphasis added).

2. The complete list excluded maintenance of: Car enclosure (including removable panels, door panels, car gates, plenum chambers, hung ceilings, light diffusers, light tubes and bulbs, handrails, mirrors and carpets), hoistway enclosure; hoistway gates, doors, frames, and sills; cylinders, plungers and buried piping.

3. Otis' form also contained a clause designating its limited responsibilities for parts showing

wear. The clause contained space for a list of worn parts. In the space, however, Otis typed "none."

Finally, Otis stated:
We shall not be liable for any loss, damage or delay due to any cause beyond our reasonable control including, but not limited to, acts of government, strikes, lockouts, *fire,* explosion, theft, floods, riot, civil commotion, war, malicious mischief or act of God. Under no circumstances shall we be liable for consequential damages.
(Emphasis added).

4. The purchase order only modified one portion of Otis' form. It provided that University would renew the contract annually for five years beginning November 1, 1976. Apparently, the parties were operating under one of these renewals at the time of the fire.

have prevented the failure. Otis also submitted John Riggs' affidavit. Riggs, an Otis employee, had serviced the elevator during the six months preceding the fire. He believed that an electrical short circuit, possibly in a conduit attached to the machinery cabinet, caused the fire.

In its trial court brief, Otis discussed only University's fluid theory and Houck's solenoid theory.[5] At the hearing on the motion, however, Otis explicitly raised Riggs' conduit theory and discussed Riggs' affidavit. Nevertheless, University focused solely on the Houck's solenoid theory. University claimed that even if Otis' solenoid theory were correct, the indemnity clause made Otis liable for failing to discover and repair the defective solenoid. University argued that Otis was liable under all causation theories since all necessarily involved Otis' failures to inspect, maintain, replace, or repair.

Otis disagreed. Otis asserted that its contract created no duty to anticipate the malfunction of an electrical component. Otis further asserted that University had failed to prove that an act or omission of Otis contributed to the loss.

The trial court adopted University's position, stating "[a]lthough the actual cause of the fire is unknown, the parties have agreed, for the purposes of this motion, that a defective solenoid in the elevator was responsible for the fire."[6] The court ruled that the contract made Otis responsible for recognizing and replacing defective parts. Thus, the court attributed the fire damage to Otis' failure to find or replace the defective solenoid. The court

granted summary judgment to University on the indemnification issue.

After a nonjury trial on the issue of damages,[7] the court entered judgment of $28,008.75 in University's favor. Otis then appealed and we now reverse.

## II. THE INDEMNITY CLAUSE

■ When reviewing a grant of summary judgment, we determine whether material facts remain for trial and whether the movant deserved judgment as a matter of law. *See, e.g., Moore v. State,* 553 P.2d 8, 15 (Alaska 1976). In this case, we could only sustain the indemnity judgment if the indemnity clause made Otis liable under all theories of the fire's origin presented below. *See C.J.M. Construction v. Chandler Plumbing & Heating,* 708 P.2d 60 (Alaska 1985). Since neither party disputes the circumstances of the contract's formation, interpretation of the indemnity clause presents this court with a question of law. *Id.* at 64; *see also Earthmovers of Fairbanks v. State,* 644 P.2d 238, 239 (Alaska 1982).

The parties dispute the scope of Otis' duty to indemnify. The trial judge apparently believed that the mere failure of a part that Otis maintained[8] triggered Otis' liability under the indemnity clause. Under the clause, Otis agreed to indemnify University "from and against any damage, cost or liability for any or all injuries to persons or property arising from *acts or omissions* of [Otis or its agents] *howsoever caused.*" (emphasis added). Ultimately, resolution of the parties' dispute depends upon our interpretation of the phrases, "acts or omissions" and "howsoever

---

5. Otis' brief asserted that the party opposing summary judgment deserved to have its version of the fire deemed correct. Otis then argued that under its theory, there was no longstanding hydraulic leak. Accordingly, Otis claimed that the trial court could not permissibly infer Otis' responsibility for the fire.

6. Otis denies that it ever so agreed. The record shows that University merely argued Otis' liability under the solenoid theory.

University now claims that Otis' failure to argue alternative causes below precludes their

consideration on appeal. Otis did, however, mention the Riggs' theory at the oral argument. Thus, we consider it here.

7. Because we reverse on the indemnification issue, we do not reach the comparative negligence or damages issues raised by Otis.

8. Under the contract, Otis agreed to maintain the elevator controller. *See supra* note 1. The parties do not dispute that this agreement extended to the controller's internal parts.

caused." Both parties agree that we must construe the indemnity clause in light of the whole contract.. *See Native Village of Eyak v. GC Contractors*, 658 P.2d 756, 760 (Alaska 1983); *Earthmovers*, 644 P.2d at 240.

The parties argue at great length whether University must prove Otis' negligence. University argues that the broad causation language, *i.e.,* "howsoever caused," makes Otis liable even for Otis' nonnegligent conduct.[9] University thus would hold Otis liable even if Otis acted reasonably. In contrast, Otis claims that the contract only obligated it to act reasonably. Thus, it implies that indemnity existed only for its unreasonable conduct. The scope of Otis' duty to indemnify thus depends upon our interpretation of "acts or omissions."

We believe that the parties' contract requires University to show that Otis acted unreasonably. In its purchase order, University formally accepted Otis' Maintenance Contract as an addition to University's General Terms and Conditions. Under Otis' Maintenance Contract, Otis obligated itself to "use all reasonable care to maintain [the elevator] in proper and safe operating condition." Otis agreed regularly to "examine, adjust, lubricate, as required, *and if conditions warrant, repair or replace ...* [the controller]." (emphasis added). We believe that the indemnity clause's "acts or omissions" refer to the acts Otis obligated itself to perform. *See Barry v. Boston Housing Authority*, 4 Mass. App.Ct. 860, 358 N.E.2d 246, 247 (1976).[10] Otis only obligated itself to use reasonable

care to inspect the elevator regularly, and repair or replace specific parts as conditions warranted. Thus, Otis need only indemnify if it omitted to act when required to act or if it acted improperly when performing its duties to inspect, replace, or repair.

This case differs materially from our recent holding in *Chandler*, 708 P.2d 60. In *Chandler*, a subcontractor agreed to indemnify the contractor for damages "arising out of, in connection with, or incident to the SUBCONTRACTOR'S performance of [the] SUBCONTRACT." *Chandler*, 708 P.2d at 62. The affidavits there presented to the trial court demonstrated that the damages were caused by the negligence of either the contractor or the subcontractor. *Id.* at 64. We held that the *Chandler* indemnity clause could encompass indemnification by a nonnegligent indemnitor of a negligent indemnitee. *Chandler*, 708 P.2d at 64, (citing *Burgess Construction v. State*, 614 P.2d 1380 (Alaska 1980)). Thus, we affirmed the summary judgment requiring the subcontractor to indemnify the contractor.

Superficially, the clause now before us might appear as broad as the *Chandler* clause. The indemnity clause, however, does not stand alone. Otis' "all reasonable care" clause, when read with University's "act or omissions" clause imposes a requirement of unreasonable conduct: Otis offered to act reasonably; University accepted this offer and should thus expect indemnification only for Otis' unreasonable conduct.[11]

---

9. University admits that the clause would not require Otis to indemnify University for University's negligence.

10. In *Barry*, the parties disputed a similar clause in an elevator maintenance agreement. There, however, the maintenance agreement did not include a duty to inspect. Nevertheless, *Barry's* principle applies here. Unless the fire's cause fell within the scope of a required contractual duty, Otis had no duty to indemnify. *See also infra* note 12 and accompanying text.

11. This case also differs materially from *Earthmovers of Fairbanks v. State*, 644 P.2d 238 (Alaska 1982). There, in a wrongful death ac-

tion against the state and a construction contractor, we interpreted an agreement containing two indemnity clauses, one provided by each party. The clause provided by the contractor stated that it would indemnify the state for any harm caused by negligence on the part of the contractor. The state's clause, however, required the contractor to indemnify the state for the negligence of any party, including the state itself. *Id.* at 239.

We found no ambiguity or conflict between these two provisions. *Id.* at 239–40. We harmonized them by subsuming the narrower into the broader. *Id.* We noted that nothing in the first clause made it the exclusive indemnity provision. *Id.* at 240.

## III. MATERIAL ISSUES OF FACT

Our clarification of the scope of the indemnity clause requires reversal. The failure of a part that Otis agreed to maintain will only trigger an indemnity right if Otis failed to inspect, maintain, repair, or replace as required by the contract. Thus, the alleged failure of the solenoid alone could not support the entry of summary judgment, since that failure, by itself, does not demonstrate any improper act or omission by Otis.[12] Rather, University must show that Otis breached its obligation under the maintenance contract, and failed to prevent the fire's cause.

Material issues remain for trial over the fire's cause. The affidavits submitted below presented three conflicting causation theories.[13] The judge [14] must further determine whether a specific cause fell within the scope of Otis' duty to reasonably maintain the elevator. The court must determine whether Otis breached any such duty. Finally, the court must determine whether any such breach actually caused University's damages.

## IV. CONCLUSION

We conclude that the trial court prematurely awarded summary judgment on indemnity. Therefore, we REVERSE the trial court's final judgment awarding damages. We REMAND the case for full trial on the issues of liability and damages.

12. University argues that Otis accepted responsibility to replace parts worn through ordinary wear and tear. *See supra* text at note 3. On the record before us, however, we cannot say that Otis' duty to repair or replace arose before reasonable inspections revealed such a need. On remand, the trial court should consider the scope and performance of Otis' duty to inspect. If a reasonable inspection would have revealed a defect, Otis would be liable for all actually caused damages. If a reasonable maintenance program would have included a replacement schedule for parts subject to unanticipated breakdowns after prolonged use, Otis would also be liable.

13. Since summary judgment on liability was improper, on remand Otis may also introduce any evidence tending to show causation from circumstances beyond its control. *See supra* note 3 and accompanying text.

14. Here, the judge functions as trier of fact since the parties agreed to a court trial.